## BURROUGHS AND CANNON *v.* UNITED STATES.

No. 434. Argued December 5, 1933.—Decided January 8, 1934.

*Mr. Robert H. McNeill* for petitioners.

537

538

*Solicitor General Biggs,* with whom *Messrs. Robert P. Reeder, W. Marvin Smith,* and *John J. Wilson* were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

An indictment returned by a grand jury sitting in the District of Columbia charges petitioners, in ten counts, with violations of the Federal Corrupt Practices Act of February 28, 1925, c. 368, Title III, 43 Stat. 1053, 1070; U.S.C., Title 2, § 241, *et seq.* The pertinent provisions of the act are contained in §§ 241, 242 and 243, reproduced in the margin,* ,and in §§ 244 and 252. Section 241 de-

---

\* ": Section 241. Definitions.—When used in this chapter—

. . . . . .

· "(c) The term ' political committee ' includes any committee, association, or organization which accepts contributions or makes expenditures for the purpose of influencing or attempting to influence the election of candidates or presidential and vice presidential electors (1) in two or more States, or (2) whether or not in more than one State if such committee, association, or organization (other than a

fines the term, "political committee," as including any organization which accepts contributions for the purpose of influencing or attempting to influence the election of presidential and vice presidential electors in two or more states. Every political committee is required to have a chairman and a treasurer before any contribution may be accepted. One of the duties of the treasurer is to keep a detailed and exact account of all contributions made to

duly organized State or local committee of a political party) is a branch or subsidiary of a national committee, association, or organization;

"242. Chairman and treasurer of political committee; duties as to contributions; accounts and receipts.—(a) Every political committee shall have a chairman and a treasurer. No contribution shall be accepted, and no expenditure made, by or on behalf of a political committee for the purpose of influencing an election until such chairman and treasurer have been chosen.

"(b) It shall be the duty of the treasurer of a political committee to keep a detailed and exact account of—

"(1) All contributions made to or for such committee;

"(2) The name and address of every person making any such contribution, and the date thereof;

"(3) All expenditures made by or on behalf of such committee; and

"(4) The name and address of every person to whom any such expenditure is made, and the date thereof.

"(c) It shall be the duty of the treasurer to obtain and keep a receipted bill, stating the particulars, for every expenditure by or on behalf of a political committee exceeding $10 in amount. The treasurer shall preserve all receipted bills and accounts required to be kept by this section for a period of at least two years from the date of the filing of the statement containing such items.

"243. Accounts of contributions received.—Every person who receives a contribution for a political committee shall, on demand of the treasurer, and in any event within five days after the receipt of such contribution, render to the treasurer a detailed account thereof, including the name and address of the person making such contribution, and the date on which received."

or for the committee. Every person who receives a contribution for a political committee is required to render to the treasurer a detailed account thereof, with specified particulars. By § 244, the treasurer is required to file with the clerk of the House of Representatives, at designated times, a statement containing the name and address of each contributor, date and amount of each contribution and other particulars, complete as of the day next preceding the date of filing. By § 252 (a), penalties of fine and imprisonment are imposed upon any person who violates any of the provisions of the chapter; and by subdivision (b), increased penalties are imposed upon any person who willfully violates any of those provisions.

The first eight counts of the indictment purport to charge petitioners with substantive violations of the act, and the ninth and tenth counts, with conspiracy to violate it—four of the eight counts charging willful violations; the other four merely charging violations, that is to say "unlawful" violations.

In the supreme court of the District, a demurrer was interposed to the indictment on the grounds (1) that each count of the indictment failed to allege facts sufficient to constitute an offense against the United States, and (2) that the Federal Corrupt Practices Act contravenes § 1, Art. II, of the Federal Constitution, providing for the appointment by each state of electors. The District supreme court sustained the demurrer upon the first ground, rendering unnecessary any ruling as to the second. Upon appeal to the District court of appeals the judgment was reversed. That court ruled each of the ten counts sufficient, and upheld the constitutionality of the act. 62 App.D.C. 163; 65 F. (2d) 796. The case is here on certiorari.

*First.* We do not stop to describe the eight substantive counts. In the opinion of a majority of the court, there is a failure in each count to charge an offense under the

statute. The conspiracy counts we hold are sufficient. The ninth count charges with particularity that the petitioner Burroughs was the treasurer of a designated political committee from July 22, 1928, to and including March 16, 1929, which committee during that period accepted contributions and made expenditures for the purpose of influencing and attempting to influence the election of presidential and vice presidential electors in two states. The several amounts of certain contributions made for the committee are set forth, together with the dates when made and the name of the contributor. The count recites the duty of Burroughs under the statute to make the statements therein prescribed in respect of these contributions, and charges that both petitioners, one as treasurer and the other as chairman of the committee, "then well knowing all the premises aforesaid," unlawfully and feloniously did conspire together and with other persons to commit "the four willfully committed offenses" charged against Burroughs as treasurer in the first, third, fifth and seventh counts of the indictment, namely, willful failure to file the statements of such contributions required by § 244, the allegations of those counts being incorporated by reference as fully as if repeated. The count further alleges certain overt acts committed in pursuance of the conspiracy.

The tenth count charges in substantially identical language a conspiracy to commit the four offenses not designated as willful, charged in the second, fourth, sixth and eighth counts of the indictment, namely, unlawful failure to file the required statements, the allegations of those counts being likewise incorporated by reference as fully as if repeated.

We are of opinion that these allegations are sufficient in each count to charge a conspiracy to violate the pertinent provisions of the act. Knowledge of the facts constituting the contemplated substantive offenses is suffi-

ciently alleged by the phrase, "well knowing all the premises aforesaid." *Brooks* v. *United States*, 267 U.S. 432, 439–440. And intent unlawfully, or unlawfully and willfully, to evade performance of the statutory duty is clearly enough alleged by the statement that the accused conspired to do so. *Frohwerk* v. *United States*, 249 U.S. 204, 209. Moreover, quite apart from the question of their legal sufficiency to charge substantive offenses, the eight counts which are incorporated by description set forth the pertinent facts, and may be considered in determining the adequacy of the conspiracy counts. *Crain* v. *United States*, 162 U.S. 625, 633; *Blitz* v. *United States*, 153 U.S. 308, 317. These facts are narrated by the court below and need not be repeated here.

*Second.* The only point of the constitutional objection necessary to be considered is that the power of appointment of presidential electors and the manner of their appointment are expressly committed by § 1, Art. II, of the Constitution to the states, and that the congressional authority is thereby limited to determining "the time of choosing the electors, and the day on which they shall give their votes; which day shall be the same throughout the United States." So narrow a view of the powers of Congress in respect of the matter is without warrant.

The congressional act under review seeks to preserve the purity of presidential and vice presidential elections. Neither in purpose nor in effect does it interfere with the power of a state to appoint electors or the manner in which their appointment shall be made. It deals with political committees organized for the purpose of influencing elections in two or more states, and with branches or subsidiaries of national committees, and excludes from its operation state or local committees. Its operation, therefore, is confined to situations which, if not beyond the power of the state to deal with at all, are beyond its

power to deal with adequately. It in no sense invades any exclusive state power.

While presidential electors are not officers or agents of the federal government (*In re Green,* 134 U.S. 377, 379), they exercise federal functions under, and discharge duties in virtue of authority conferred by, the Constitution of the United States. The President is vested with the executive power of the nation. The importance of his election and the vital character of its relationship to and effect upon the welfare and safety of the whole people cannot be too strongly stated. To say that Congress is without power to pass appropriate legislation to safeguard such an election from the improper use of money to influence the result is to deny to the nation in a vital particular the power of self protection. Congress, undoubtedly, possesses that power, as it possesses every other power essential to preserve the departments and institutions of the general government from impairment or destruction, whether threatened by force or by corruption.

In *Ex parte Yarbrough,* 110 U.S. 651, this court sustained the validity of § 5508 of the Revised Statutes, which denounced as an offense a conspiracy to interfere in certain specified ways with any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States; and of § 5520, which denounced as an offense any conspiracy to prevent by force, etc., any citizen lawfully entitled to vote from giving his support, etc., toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a member of Congress. The indictments there under consideration charged Yarbrough and others with conspiracies in violation of these sections. The court held, against the contention of the accused, that both sections were constitutional. It is true that while § 5520 includes interferences with persons in

giving their support to the election of presidential and vice presidential electors, the indictments related only to the election of a member of Congress. The court in its opinion, however, made no distinction between the two, and the principles announced, as well as the language employed, are broad enough to include the former as well as the latter. The court said (pp. 657–658):

"That a government whose essential character is republican, whose executive head and legislative body are both elective, whose most numerous and powerful branch of the legislature is elected by the people directly, has no power by appropriate laws to secure this election from the influence of violence, of corruption, and of fraud, is a proposition so startling as to arrest attention and demand the gravest consideration.

"If this government is anything more than a mere aggregation of delegated agents of other States and governments, each of which is superior to the general government, it must have the power to protect the elections on which its existence depends from violence and corruption.

"If it has not this power it is left helpless before the two great natural and historical enemies of all republics, open violence and insidious corruption."

And, answering the objection that the right to vote for a member of Congress is not dependent upon the Constitution or laws of the United States but is governed by state law, the court further said (p. 663):

"If this were conceded, the importance to the general government of having the actual election—the voting for those members—free from force and fraud is not diminished by the circumstance that the qualification of the voter is determined by the law of the State where he votes. It equally affects the government, it is as indispensable to the proper discharge of the great function of legislating

for that government, that those who are to control this legislation shall not owe their election to bribery or violence, whether the class of persons who shall vote is determined by the law of the State, or by law of the United States, or by their united result."

And finally (pp. 666–667):

" In a republican government, like ours, where political power is reposed in representatives of the entire body of the people, chosen at short intervals by popular elections, the temptations to control these elections by violence and by corruption is a constant source of danger.

. . . . .

" If the recurrence of such acts as these prisoners stand convicted of are too common in one quarter of the country, and give omen of danger from lawless violence, the free use of money in elections, arising from the vast growth of recent wealth in other quarters, presents equal cause for anxiety.

" If the government of the United States has within its constitutional domain no authority to provide against these evils, if the very sources of power may be poisoned by corruption or controlled by violence and outrage, without legal restraint, then, indeed, is the country in danger, and its best powers, its highest purposes, the hopes which it inspires, and the love which enshrines it, are at the mercy of the combinations of those who respect no right but brute force, on the one hand, and unprincipled corruptionists on the other."

These excerpts are enough to control the present case. To pursue the subject further would be merely to repeat their substance in other and less impressive words.

The power of Congress to protect the election of President and Vice President from corruption being clear, the choice of means to that end presents a question primarily addressed to the judgment of Congress. If it can be seen

that the means adopted are really calculated to attain the end, the degree of their necessity, the extent to which they conduce to the end, the closeness of the relationship between the means adopted and the end to be attained, are matters for congressional determination alone. *Stephenson* v. *Binford*, 287 U.S. 251, 272. Congress reached the conclusion that public disclosure of political contributions, together with the names of contributors and other details, would tend to prevent the corrupt use of money to affect elections. The verity of this conclusion reasonably cannot be denied. When to this is added the requirement contained in § 244 that the treasurer's statement shall include full particulars in respect of expenditures, it seems plain that the statute as a whole is calculated to discourage the making and use of contributions for purposes of corruption.

The judgment of the court below will be affirmed in respect of the ninth and tenth counts of the indictment only, and the cause remanded to the supreme court of the District for further proceedings in conformity with this opinion.

*Affirmed in Part.*

Separate opinion of MR. JUSTICE McREYNOLDS.

To me it seems sufficiently clear that the trial judge rightly sustained the demurrer to the entire indictment.

Since counts one to eight fail to charge any offense under the statute, but are nevertheless incorporated by reference in the conspiracy counts (nine and ten), we must carefully consider the exact language by which the latter undertake to describe the conspiracy.

Count Nine, with italics supplied, alleges:

And the grand jurors aforesaid, upon their oath aforesaid, do further present, that said Ada L. Burroughs and

James Cannon, jr. hereinafter called defendants, said James Cannon, jr. throughout said period of time being the chairman of said political committee, continuously throughout said period of time, and while said Ada L. Burroughs was such treasurer of said political committee and said James Cannon, jr., was chairman thereof as aforesaid, each of said defendants then well knowing all the premises aforesaid, unlawfully and feloniously did *conspire, combine,* confederate, and agree together, and with divers other persons to said grand jurors unknown, *to commit* divers, to wit, *four, offenses* against the United States, that is to say, the four willfully-committed offenses on the part of said Ada L. Burroughs, as treasurer of said political committee, *charged against her* in the *first, third, fifth* and *seventh* counts of this indictment, the allegations of which said counts descriptive of said offenses respectively, and of the circumstances and conditions under which they were so committed, are incorporated in this count, by reference to said first, third, fifth, and seventh counts, as fully as if they were here repeated.

Count Ten, with italics supplied, alleges:

And the grand jurors aforesaid, upon their oath aforesaid, do further present, that said Ada L. Burroughs and James Cannon, jr., hereinafter called defendants, said James Cannon, jr., throughout said period of time being the chairman of said political committee, continuously throughout said period of time, and while said Ada L. Burroughs was such treasurer of said political committee and said James Cannon, jr., was chairman thereof as aforesaid, each of said defendants then well knowing all the premises aforesaid, unlawfully and feloniously did *conspire, combine,* confederate and agree together, and with divers other persons to said grand jurors unknown,

*to commit* divers, to wit, *four, other* offenses against the United States, that is to say, the *four offenses* on the part of said Ada L. Burroughs, as treasurer of said political committee, *charged against her* in the *second, fourth, sixth,* and *eighth counts* of this indictment, the allegations of which said counts descriptive of said offenses respectively, and of the circumstances and conditions under which they were so committed, are incorporated in this count, by reference to said second, fourth, sixth, and eighth counts, as fully as if they were here repeated.

Interpreted with proper regard to the defendants' rights, count nine, also count ten, undertakes to describe a conspiracy to commit crimes said to be charged against Burroughs in other counts. But this Court now affirms that those counts fail adequately to specify any offense whatsoever.

Thus, we have allegations of what are called conspiracies to commit crimes which are nowhere adequately described. And I cannot think that such pleading should find toleration in any criminal action.

An indictment ought to set out with fair certainty the charge to which the accused must respond. If crime has been committed, a fairly capable prosecuting officer can definitely describe it.

Here, we have an example of what seems to me inordinate difficulty unnecessarily thrust upon the accused. An experienced trial judge was unable to find proper description of crime in any of the ten counts of the indictment. The Court of Appeals, with a judge of long service dissenting, ruled that every count was sufficient. This Court, being divided, now declares eight of the counts bad, but holds that two are sufficient.

Surely, such contrariety of opinion concerning allegations of the indictment indicates plainly enough that no man should be required to go to trial under it.