### SECURITIES AND EXCHANGE COMMISSION v. MORGAN, LEWIS & BOCKIUS et al.

#### No. 14258.

United States District Court,
E. D. Pennsylvania.

June 3, 1953.

Roger S. Foster, Washington, D. C., for plaintiff.

Thomas B. K. Ringe and William Clarke Mason, Philadelphia, Pa., for defendants.

GRIM, District Judge.

This is an action by the Securities and Exchange Commission (hereinafter referred to as the "Commission") to compel by mandamus the law firm of Morgan, Lewis & Bockius and the individual partners thereof, all of whom are defendants, to file informational statements with the Commission under Section 12(i) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79l(i) and the Commission's

Rule U–71, 17 C.F.R. Sec. 250.71. The information demanded has to do with defendants' practice, as attorneys at law, in representing The United Gas Improvement Company (hereinafter referred to as "UGI") in proceedings before the Commission pursuant to Section 11 of the Public Utility Holding Company Act during the years 1941 to 1944, inclusive, 1946, 1947, 1951 and 1952. The plaintiff also seeks by the action to enjoin the defendants permanently from failing to file such statements in the future.[1]

The case is before this Court on plaintiff's motion for summary judgment.

There is no dispute as to the facts. They are set forth in the complaint, the answer, and an affidavit filed in support of plaintiff's motion for summary judgment. They may be summarized as follows:

In March, 1940, the Commission instituted corporate integration and simplification proceedings against UGI under Section 11 of the Public Utility Holding Company Act. In connection with those proceedings the defendant law firm, acting through various partners and associates, represented UGI and its subsidiaries. In doing so, the defendants (all of whom are members of the bars of the Supreme Court of Pennsylvania and one or more of the Pennsylvania lower courts and one or more of the federal courts) engaged solely in the practice of law and did not engage in lobbying. Defendants presented to the Commission evidence in support of plans, applications and petitions filed by UGI and its subsidiaries, advocated Commission approval thereof in briefs and oral arguments, presented UGI's views with respect to various matters which arose during the course of such proceedings, and in a number of instances opposed positions taken by the staff of the Commission's Division of Public Utilities. In addition to their appearances before hearing examiners and before the Commission itself, defendants participated in numerous conferences with members of the staff of the Division of Public Utilities in matters pertaining to UGI and its subsidiaries which subsequently became the subjects of the more formal administrative proceedings.

Defendants have never filed, and have consistently refused to file, statements under Section 12(i) of the Act and Rule U–71 promulgated thereunder.

The question whether Section 12(i) applies to defendants in their practice of law before the Commission was made the subject of extensive correspondence and discussions between the parties early in 1944, at which time defendants made their position quite clear in refusing to accede to the Commission's request for compliance with Section 12(i) of the Act and Rule U–71. They are and always have been strongly of the opinion that Section 12(i) and the rules promulgated thereunder do no apply to lawyers practicing their profession before the Commission. The Commission made no further attempt to obtain defendants' compliance until the year 1952, when, following additional correspondence thereon between the parties, the Commission informally rejected defendants' request that Rule U–71 not be applied to them. Defendants' position was then orally presented at a formal hearing before the Commission. After having been advised that

---

1. Section 18(f) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79r(f) authorizes the Commission to seek an order of this Court enjoining acts or practices which constitute a violation of, and "to enforce compliance with", the statute or any rule thereunder. Section 18(g), 15 U.S.C.A. § 79r(g) further provides that upon application of the Commission, this Court has jurisdiction to issue "writs of mandamus commanding any person to comply" with the provisions of the statute or any rule thereunder. Rule 81(b) of the Federal Rules of Civil Procedure, 28 U.S.C. has abolished writs of mandamus, but expressly provides that "Relief heretofore available by mandamus * * * may be obtained by appropriate action or * * * motion under the practice prescribed in these rules." In addition, Section 25 of the Act, 15 U.S.C.A. § 79y, gives this Court jurisdiction of any action to enforce any liability or duty created by the statute and rule, or to enjoin violation thereof. See Securities and Exchange Comm. v. Atlas Tack Corp., D.C.Mass.1950, 93 F.Supp. 111. Defendants agree that mandamus is a proper form of action.

the Commission had denied their application that Rule U–71 not be enforced against them, defendants filed a formal petition for repeal of Rule U–71. The petition for repeal of U–71 was denied by the Commission on the same day, and the following day, September 26, 1952, the complaint in this action was filed. Both sides regard this as a test case to determine whether the Commission or the defendants are correct in their respective positions.

Section 12(i) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79*l*(i), provides:

"It shall be unlawful for any person employed or retained by any registered holding company, or any subsidiary company thereof, to present, advocate, or oppose any matter affecting any registered holding company or any subsidiary company thereof, before the Congress or any Member or committee thereof, or before the [Securities and Exchange] Commission or Federal Power Commission, or any member, officer, or employee of either such Commission, unless such person shall file with the Commission in such form and detail and at such time as the Commission shall by rules and regulations or order prescribe as necessary or appropriate in the public interest or for the protection of investors or consumers, a statement of the subject matter in respect of which such person is retained or employed, the nature and character of such retainer or employment, and the amount of compensation received or to be received by such person, directly or indirectly, in connection therewith. It shall be the duty of every such person so employed or retained to file with the Commission within ten days after the close of each calendar month during such retainer or employment, in such form and detail as the Commission shall by rules and regulations or order prescribe as necessary or appropriate

in the public interest or for the protection of investors or consumers, a statement of the expenses incurred and the compensation received by such person during such month in connection with such retainer or employment."

Commission Rule U–71, 17 C.F.R. Sec. 250.71, prescribes forms of statements which require detailed disclosure of the types of information specified in Section 12(i) of the Act.

Defendants' first contention is that Section 12(i) has no application to the legitimate practice of law before the Commission, but only to actual "lobbying" activities. They point to nothing in the statute to support their contention, but they say that their view is justified by the legislative history of the statute.

■ It is well settled that reference to legislative history is not called for where a statute is clear and unambiguous.[2] It is not necessary to go beyond the language of Section 12(i) itself to ascertain that Congress intended its provisions to be applicable to lawyers. It applies to persons, among others, who are "retained" to "present", "advocate" or "oppose" any matter affecting a registered holding company. A statement is required, among other things, of the subject matter with respect to which such person is "retained" and the nature of the "retainer". The use of the words "retain", "retainer" and "advocate" indicates, in my opinion, that Congress contemplated that lawyers engaged in the practice of law before the Commission would be expected to give the required information, for the words are peculiarly referable to the activities of lawyers. Moreover, the "matters" which registered public utility holding companies normally have before the Commission under the Holding Company Act are of such character as to require the legitimate services of attorneys. The work of the defendants in the present case is a good example of this.

2. Ex Parte Collett, 1949, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207; United States v. Mo. Pac. R. Co., 1929, 278 U. S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322; Robinson v. Difford, D.C.E.D.Pa.1950, 92 F.Supp. 145, 148.

Section 12(i) nowhere uses the term "lobbying". It refers simply to persons who may be engaged or "retained" by a registered holding company to "present, advocate, or oppose" any matter before the Commission affecting any such company. Defendants admittedly were retained for such purpose, and admittedly did present, advocate and oppose matters affecting UGI.

The broad language of Section 12(i) was intended to comprehend and does comprehend the activities of "lobbyists". But this certainly does not mean that Congress, in using this broad language, did not intend also to require disclosures of fees and expenses paid to lawyers for activities which, in many cases, might constitute nothing more than the legitimate practice of law. Section 12(i) contains no unqualified prohibition of lobbying; instead, Congress utilized the technique of disclosure as a deterrent to aspects of lobbying which were regarded as involving too subtle an abuse to be dealt with effectively by such prohibition. For that reason, the disclosure requirements necessarily cover a broadly defined area which may or may not involve the particular evil intended to be discouraged.[3] While the complaint does not charge any abuse, subtle or otherwise, in defendants' activities, the absence of abuse is no reason for not requiring disclosures designed to deter abuse.[4] It is evident that payment of a fee higher than and unrelated to the value of legitimate legal services conceivably could involve payment for influence or supposed influence or a payment subject to the understanding that the recipient would make ostensibly on his own behalf, but really on behalf of his holding company client, the type of political contribution which his client is prohibited from making by Section 12(h) of the Act, 15 U.S.C.A. § 79l (h). Furthermore, the expenses of an attorney might include expenditures, whether or not specifically prohibited by Section 12(h), which could be regarded as improper attempts to influence administrative or legislative activity. Since attorneys can act as lobbyists in the sinister sense of the word, and since the line between legitimate acts of persuasion and attempts at improper influence may frequently be a shadowy one, it is probable that Congress thought that it was necessary to require complete disclosures irrespective of the legitimacy of the particular services rendered, the reasonableness of the fees charged, or the propriety of the expenditures.[5] The Commission was given discretion to prescribe the "form and detail" of the disclosures to be made; and the forms it has adopted have been designed to reveal possibly illegitimate activities without imposing burdensome detail with respect to routine and legitimate expenditures.

In view of my holding that the language of Section 12(i) is clear and unambiguous, it is unnecessary to refer to its legislative history in order to ascertain the purpose or intent of Congress in enacting the statute. However, a careful reading of the legislative history of the Holding Company

---

3. On the utility of the disclosure technique as a method of discouraging possible undesirable activity in the political field, see Burroughs v. U. S., 1934, 290 U.S. 534, 548, 54 S.Ct. 287, 78 L.Ed. 484.

4. Cf. Securities and Exchange Comm. v. Chenery Corp., 1943, 318 U.S. 80, 92, 63 S.Ct. 454, 87 L.Ed. 626; Securities and Exchange Comm. v. Chenery Corp., 1947, 332 U.S. 194, 206, 207–208, 67 S. Ct. 1575, 91 L.Ed. 1995; Smolowe v. Delendo Corporation, 2 Cir., 1943, 136 F.2d 231, 239–240, 148 A.L.R. 300, certiorari denied 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446.

5. The Special Committee of the Senate which investigated lobbying against the passage of the Holding Company Act took a good deal of testimony relating to payments of large fees to well-known lawyers and law firms for "legal services". See, e.g., Hearings Before a Special Committee to Investigate Lobbying Activities, U.S. Senate, 74th Cong., 1st Sess. (1935–1936), pp. 5, 641, 848–851, 855, 857–859, 862, 873–895, 1133–1336, 1156–1157, 1528. Lawyer witnesses insisted that they had had nothing to do with "lobbying", but had engaged in, and had been paid for, legal services only. Reasonable minds, however, might differ as to whether all these attorneys were paid for purely legal services.

90

Act and particularly of Section 12(i) thereof has revealed nothing to me to indicate that Congress intended to exempt the activities of persons engaged in the practice of law before the Commission from the broad coverage of that section.

 Defendants' second contention is that Section 12(i) has impliedly been repealed by (1) the Federal Regulation of Lobbying Act of 1946, 2 U.S.C.A. §§ 261–270, and (2) Section 6(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1005(a). They claim that the first statute covers the same ground and that the second is inconsistent with Section 12(i) if the latter is applicable to the practice of law. Worth noting at this point is the principle of statutory construction that repeal by implication is not favored. To work an implied repeal of an earlier law a newer statute must involve a "positive repugnancy"; and even then the older law is repealed by implication only *pro tanto* to the extent of the repugnancy.[6]

Section 307 of the Federal Regulation of Lobbying Act of 1946, hereinafter called the "1946 Lobbying Act", 2 U.S.C.A. § 266, expressly states that the Act is limited to persons who solicit, collect or receive money or other valuable things for the principal purpose of aiding in the accomplishment of "the passage or defeat of any legislation by the Congress of the United States" or in influencing the passage or defeat of such legislation. The 1946 Lobbying Act does not relate to matters before administrative agencies, as does Section 12(i) of the Holding Company Act. Therefore, in my opinion, the provisions of Section 12(i) pertaining to matters before the Securities and Exchange Commission and the Federal Power Commission are not inconsistent with, and have not been superseded by, the 1946 Lobbying Act.[7]

 Defendants also contend that there is an inconsistency between Section 12(i) of the Holding Company Act and Section 6(a) of the Administrative Procedure Act, hereinafter referred to as the "APA". Section 6(a) of the APA, which was passed in 1946, provides in relevant part that "Any person compelled to appear in person before any agency or representative thereof shall be accorded the right to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." Defendants argue that the APA covers the entire field of practice before federal administrative agencies and thereby impliedly repeals any earlier partial efforts at such regulation such as Section 12(i) of the Holding Company Act. The APA, they point out, in granting defendants' client the right to be represented by counsel, imposes no requirement for the filing of statements of fees and expenses. From this they argue that since the passage of the APA the requirement no longer exists and that to this extent the Holding Company Act has been repealed.

The APA, in my opinion, was not intended to govern the entire field of practice before administrative agencies, including requirements which may be imposed upon attorneys engaged in the practice of law before such bodies. Indeed, Section 12 of the APA, 5 U.S.C.A. § 1011, expressly provides that "Nothing in this chapter shall be held * * * to limit or repeal additional requirements imposed by statute or otherwise recognized by law."

Section 12(i) of the Holding Company Act does not purport to prescribe qualifications for the practice of law before the Securities and Exchange Commission. It merely requires that a lawyer, who represents a registered public utility holding company in a matter before the Commission, file a report as to the character of his retainer and the amount of his compensation. The filing of such report is not a prerequisite to representation. Under Rule U-71, it need not be filed until after the attorney has acted for his client. Section

6. United States v. Borden Co., 1939, 308 U.S. 188, 198–199, 60 S.Ct. 182, 84 L. Ed. 181.

7. It is unnecessary to determine at this

time the extent to which the provisions of Section 12(i) pertaining to matters before Congress or members or committees thereof may have been affected by the 1946 Lobbying Act.

12(i) of the Holding Company Act is a substantive disclosure requirement which can hardly be deemed to have been repealed impliedly by a statute, such as the APA, which deals only with matters of procedure. In my opinion, there is no inconsistency between the APA and Section 12(i) of the Holding Company Act and the passage of the APA has not repealed Section 12(i) of the Holding Company Act.

■ Defendants also contend that Rule U–71, promulgated under Section 12(i) of the Act, conflicts with Rule II(b) in that both rules, with inconsistent requirements, prescribe qualifications for admission to practice before the Commission. This contention also must be rejected. Section 12(i) and Rule U–71 do not prescribe qualifications for practice before the Commission. They require merely that attorneys who represent certain clients file specified reports when they engage in that activity.[8] Rule of Practice II(b), on the other hand, does prescribe qualifications for practice, providing that "a person may be represented in any proceeding by an attorney at law admitted to practice before the Supreme Court of the United States, or the highest court of any State or Territory of the United States, or the Court of Appeals or the District Court of the United States for the District of Columbia." These two rules were made for two different purposes. There is clearly no conflict between the disclosure requirements of Rule U–71 and the practice requirements of Rule II(b).

Since Rule U–71 does not pertain to the qualifications of attorneys, there is no merit in defendants' further contention that Rule U–71 places burdens upon the qualifications of members of the legal profession to practice before the Commission and, therefore, that the rule should have been promulgated as part of the Rules of Practice "to give the public notice of its existence as such." It should be noted, however, that Rule U–71, which is within the substantive scope of Section 12(i), was properly published in the Federal Register as part of the Commission's General Rules and Regulations under the Holding Company Act, 17 C.F.R. § 250.71.

■ Defendants also contend that Section 12(i) and Rule U–71 based upon it are unconstitutional because they are vague and discriminatory. In my opinion, the facts of the present case do not raise a genuine constitutional issue. They do raise a question of statutory construction, which I have already decided by holding that Section 12(i) and Rule U–71 are clear and unambiguous with respect to their applicability to the precise facts of the present case. The Supreme Court of the United States has consistently declined to consider the sufficiency of statutory language beyond its applicability to the facts of the case at issue.[9] In my opinion, the language of Section 12(i) and Rule U–71, applied to the facts of the present case, is sufficiently definite to satisfy the requirements of due process of law under the Fifth Amendment.

The opinions in the two 1946 Lobbying Act cases,[10] decided by Judge Holtzoff of the District of Columbia and cited by defendants, lend no support to their contention that Section 12(i) is unconstitutionally vague. In National Association of Manufacturers v. McGrath, D.C.D.C.1952, 103 F.Supp. 510, the court held invalid the

---

8. A "ten-day statement" is required to be filed (on Form U–12(I)–A) within ten days after the registrant engages in any activity within the scope of Section 12 (i). An "advance statement", which is optional, covers all anticipated activities within the scope of the statute for the remainder of the calendar year and must be followed within 30 days after the end of the year by a "supplemental statement" (on the same form as the advance statement, i.e., on Form U–12(I)–B) to supply specific figures on fees and expenses which are not available at the time the advance statement is filed.

9. Rescue Army v. Municipal Court, 1947, 331 U.S. 549, 569–570, 67 S.Ct. 1409, 91 L.Ed. 1666; Liverpool, New York and Philadelphia Steamship Co. v. Emigration Commissioners, 1885, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899.

10. National Association of Manufacturers v. McGrath, D.C.D.C.1952, 103 F.Supp. 510, judgment vacated as moot, 1952, 344 U.S. 804, 73 S.Ct. 31, 97 L.Ed. 29; U. S. v. Harris, D.C., 109 F.Supp. 641.

provisions, of Sections 305 and 307 of the 1946 Lobbying Act, requiring quarterly statements of contributions and expenditures by persons who solicited, collected or received money to be used principally to aid, or whose principal purpose was to aid, in the passage or defeat of any legislation by Congress, or *"to influence, directly or indirectly,"* the passage or defeat of legislation by Congress. The section of the Act containing the italicized language was held unconstitutionally vague in violation of the Fifth Amendment. The penalty, Section 310(b), applicable to violations of the above-mentioned filing requirements (as well as to violations of other sections of the Act), also was held invalid in that it proscribed any person convicted under the statute from attempting to influence legislation for a period of three years, thereby violating the constitutional right of every citizen to petition Congress. The court held no section unconstitutional except the sections mentioned above.

In the case of U. S. v. Harris, D.C., 109 F.Supp. 641, the court did not decide that Section 308 [11] of the 1946 Lobbying Act, which in some ways is similar to Section 12(i) of the Holding Company Act, is unconstitutional standing by itself. In fact the same court had previously decided that Section 308 is not on its face unconstitutional [12] and that Section 308 for constitutional purposes is separable from the other sections of the Act.[13] What the court did decide in the Harris case is that Section 308 is rendered unconstitutional because and only because of the applicability to it of the same penalty provision previously held invalid in the McGrath case.

Defendants' contention that Section 12(i) involves arbitrary or unreasonable discrimination amounting to a denial of due process of law I overrule with only one brief comment. Section 12(i) makes it unlawful for "any person" retained by any registered holding company or subsidiary thereof to present, advocate or oppose any matter affecting such company before the Commission, unless such person shall file certain specified statements. Lawyers are included within the term "any person" and are subjected to exactly the same disclosure requirements as is anyone else who engages in activities within the purview of Section 12(i).

Defendants' final contention is that the Commission has waived the enforcement of Rule U–71 against them because for eight years, from 1944 to 1952, the Commission made no attempt to obtain their compliance with the rule. This contention also is without merit. The Supreme Court of the United States rejected a similar contention that the Federal Trade Commission had forfeited through non-user any power it may have possessed to require certain special reports of corporations, stating: [14]

"The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant. * * *."

In the present case the powers were not permitted to lie dormant. Many other lawyers complied with the rule during the period when the defendants refused to comply.

Congress and the Commission, in my opinion, have clearly enough set forth disclosure requirements, which they considered necessary and proper, and there is no constitutional objection to what they have done. If Congress had enacted disclosure requirements for practice before the courts, perhaps a different constitutional problem would have been presented, name-

---

11. Section 308 requires "Any person who shall engage himself for pay or for any consideration for the purpose of attempting to influence the passage or defeat of any legislation by the Congress of the United States", to register with the Clerk of the House of Representatives and with the Secretary of the Senate, and to file certain quarterly reports.

12. United States v. Slaughter, D.C.D.C. 1950, 89 F.Supp. 205, 206.

13. National Association of Manufacturers v. McGrath, D.C.D.C.1952, 103 F.Supp. 510, 511.

14. United States v. Morton Salt Co., 1950, 338 U.S. 632, 647, 70 S.Ct. 357, 366, 94 L. Ed. 401.

ly the question of the possible encroachment by Congress upon the constitutional powers of the judicial branch of the government.

The plaintiff's motion for summary judgment will be granted. An order in accordance with the foregoing opinion may be submitted.