**J. B. STONER**

v.

**Ben W. FORTSON, Jr., Individually and as Secretary of State of Georgia; and Arthur Bolton, Individually and as Attorney General of Georgia.**

**Civ. A. No. C74–1300A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 2, 1974.

J. B. Stoner, Marietta, Ga., pro se.

Arthur K. Bolton, Atty. Gen., H. Andrew Owen, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendant.

Before BELL, Circuit Judge, and O'KELLEY and HENDERSON, District Judges.

O'KELLEY, District Judge:

This action was heard before a court of three judges pursuant to 28 U.S.C. §§ 2281 and 2284, presenting the question of whether the Campaign Financing Disclosure Act [hereinafter "the Act"] enacted by the Georgia General Assembly in 1974 requiring candidates for certain offices, *inter alia,* to disclose the names and addresses of contributors to their campaigns, is violative of the United States Constitution. This court has jurisdiction under 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2281, and 2284.

The plaintiff in this case is J. B. Stoner, a candidate for the office of Lieutenant Governor of Georgia, who alleges that the Act is unconstitutional on three grounds: (1) It violates Article I, Section 9 of the Constitution, being an *ex post facto* law; (2) it violates the fourteenth amendment's equal protection clause; and (3) it violates the fourteenth and first amendment rights of free speech and association.

The Act in question was enacted by the Georgia General Assembly for the declared purpose of furthering "its responsibility to protect the integrity of the democratic process and to insure fair elections" for enumerated offices and "to institute and establish a requirement of public disclosure of campaign contributions and expenditures relative to the seeking of such offices." The Act permits each candidate to have but one campaign committee and requires all contributions to be made directly to the candidate or to that committee. The name and address of the chairman and treasurer of the campaign committee must be filed with the Georgia Secretary of State before the committee may accept contributions, and no contribution may be accepted while there is a vacancy in one of those offices.

Anonymous contributions are prohibited by the Act. The committee and/or candidate must keep detailed records of contributions and expenditures and disclosures must be filed with the Secretary of State giving the amount, name, and mailing address of any person contributing $101 or more during the twelve preceding months (separate contributions of less than $101 knowingly received from a common source are aggregated annually) and the amount, name, and mailing address of any person to whom an expenditure of $101 or more is made (separate expenditures of less than $101 to the same person are likewise aggregated annually). Contributions accepted or expenditures made prior to the effective date of the Act and within the twelve month period covered must be disclosed to the extent the information is shown in the candidate or committee's records or on information otherwise known to them. These reports so made to the Secretary of State are kept available for public inspection and copying and are preserved for a period of five years.

A knowing violation of any of the Act's provisions subjects one to a fine of not more than $5,000 or imprisonment of one year or both.

This Act was initially challenged on various state and federal constitutional grounds (including each ground alleged in the present action) before the Georgia Supreme Court in Fortson v. Weeks, 232 Ga. 472, 208 S.E.2d 68, June 20, 1974, rehearing denied July 9, 1974). In that case the Georgia Supreme Court struck down portions of the Act as violative of the Georgia Constitution and thus eliminated them from the Act. Other provisions were interpreted and construed, but the basics of the Act as set forth above were upheld against both state and federal constitutional attacks. Mr. Stoner was not a party to that action, and on Friday, June 28, 1974, Mr. Stoner sought from this court an order temporarily restraining the enforcement of the provisions of the Act with respect to him. This court issued an order whereby Mr. Stoner was to comply fully with the Georgia law except that his disclosures pursuant to the Act would be mailed to this court in a sealed envelope rather than filed with the Secretary of State, which envelope would be retained pending final disposi-

tion of the action, at which time it would either be returned to Mr. Stoner or forwarded to the Georgia Secretary of State depending on the decision of this court.

It was stipulated at oral argument by both parties that the decision would be based on a prayer for a permanent injunction rather than a temporary one and would be considered as if the defendants had filed a motion to dismiss the action.

The defendants did subsequently file two separate motions to dismiss raising numerous grounds. The defendants did not move to dismiss on the ground that the entire complaint failed to state a claim upon which relief could be granted, but from the stipulation at oral argument, the court will consider this case as if such a motion had been made.

## STANDING

■■ The first issue this court must face is plaintiff's standing to assert the constitutional rights presented. In his complaint plaintiff asserts his right to bring this action on the ground that he is a candidate for the office of Lieutenant Governor of Georgia in the Democratic primary. At first there might appear to be problems under Moose Lodge v. lrvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct 1101, 6 L.Ed.2d 393 (1961) since in addition to contending the classification of offices covered by the Act denied him equal protection, plaintiff also contends that his contributors' first amendment rights of free speech and association are infringed upon. Under *Moose Lodge* and *McGowan* it is settled plaintiff can only raise his own constitutional rights. Plaintiff contends he has standing under NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), where the N.A.A.C.P. was allowed to assert the same rights for its members. At oral argument, in answer to a question from this court, plaintiff acknowledged that he had made contributions and planned future contributions to his own campaign. This

court feels that this fact puts plaintiff in the class of contributors with a concurrent right to assert the first amendment rights of such contributors. Also, while plaintiff is not an association such as the N.A.A.C.P. with the same nexus with its members, nevertheless, the Supreme Court recognized in NAACP v. Alabama that "[t]he reasonable likelihood that the [NAACP] itself through diminished financial support and membership may be adversely affected if production is compelled is a further factor pointing towards our holding that petitioner has standing . . . ." *Id.* at 459–460, 78 S.Ct. at 1170. This reasoning applies equally well to the case *sub judice*. We hold that plaintiff has standing to raise the constitutional issues before this court for the reason that he is, in fact, a contributor coupled with the fact there is a reasonable likelihood his financial support will be diminished. Thus, plaintiff has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues. . . . ." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). *See also* Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

## EX POST FACTO

■ The original tenor of plaintiff's first contention was that since prior contributors might not have chosen to contribute if their names were to be disclosed, a law passed subsequent to the contribution requiring disclosure of such prior contribution was *ex post facto*. Of course, an *ex post facto* law is one that either "makes an action done before the passing of the law, and which was innocent when done, criminal . . . [or] aggravates a crime . . . [or] changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed . . . ." Love v. Fitzharris, 460 F.2d 382, 384 (9th Cir. 1972) quoting Calder v. Bull, 3 U.S. (3 Dall) 386, 390, 1 L.Ed. 648 (1798). Nothing legal when done

is made a crime by this Act. The Georgia Constitution has an even stricter *ex post facto* clause than does the federal Constitution, *see* Ga.Code Ann. § 2–302, Const. art. I, § III, par. 2, also prohibiting retroactive laws; however, the Georgia Supreme Court found no violation of this provision by the Act. *See* Fortson v. Weeks, *supra.* Nevertheless, this issue is moot in the case *sub judice.* At the hearing plaintiff disclosed that he had received no contributions prior to the date the Act was passed; therefore, there is no question of his having to disclose such contributions, and no ruling on this issue is made.

## EQUAL PROTECTION

■■ Plaintiff next contends that the Act deprives him of equal protection of the laws inasmuch as it "applies to certain State Offices, such as Lieutenant Governor, but does not apply to Judges of the Georgia Supreme Court or any other State Courts." In addressing the equal protection question, the classification challenged must first be delineated by the court so that the proper standard of judicial scrutiny will be applied. Cases involving equal protection issues reveal two general standards to be used by the courts in making their determination: (1) The "reasonableness" or "rational basis test" where a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it," McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The reasoning under this test is that legislatures are presumed to have legislated within the limits of the constitution even though there may be some inequality. *See also* McDonald v. Bd. of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); (2) The "strict scrutiny" or "compelling state interest" test where the presumption that legislative action is constitutional is abandoned, and the state must show an overriding interest. This test is applied only in cases involving suspect classes or fundamental rights. *See* San Antonio Independent School

Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

■ The classification that plaintiff challenges is the classifying of legislative and executive offices differently from judicial offices for purposes of campaign disclosure under the Act. This classification is not "suspect"; those classes being limited to classifications based on race, nationality, religion, and wealth. Neither is this a matter involving a fundamental right, *i. e.* certain established constitutional rights. Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (concurring opinion of Stewart, J.). This action involves a classification distinguishing between the judicial branch on one hand and the legislative and executive branches on the other as to the requirement of certain campaign disclosures. While freedom of expression and association are fundamental rights, N.A.A.C.P. v. Button, 371 U.S. 415, 437, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), we are not here dealing with a statute that unduly inhibits the freedoms of expression and association of members of either class; rather we deal merely with a classification of officials, so there is no basis for contending the classification created violates a fundamental right. We thus deal with a classification which will be upheld unless the choice departs from every public purpose which could reasonably be conceived, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), unless no facts reasonably justify it. McGowan v. Maryland, *supra.*

■■ Given the test that is to be used, the exact classification to which it is to be applied must be determined. In the Act as originally passed by the Georgia General Assembly, all county and municipal officials were included within the purview of the Act requiring disclosures. Included in these "county

and municipal officials" are some offices within the judicial branch, e. g. civil and state court judges and solicitors. The Act was held unconstitutional in Fortson v. Weeks, *supra,* as applied to all county and municipal officials based on a state constitutional provision requiring all matter in the body to be expressed in the title of the Act. *See* Ga.Code Ann § 2–1908, Const. art. III, § VII, par. 8. The question for this court then becomes whether the classification before us is as originally enacted by the legislature or as exists after the Georgia Supreme Court decision in Fortson v. Weeks, *supra.* Of course, it is a long settled rule that the construction of a statute by a state supreme court is binding on federal courts, and that the words of the state supreme court "are the words of the statute." N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963); *see also* Hebert v. Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270 (1926); but the basis behind the "rational basis" test in equal protection cases is that the legislature is presumed to have acted constitutionally, McGowan v. Maryland, *supra.* The Georgia Supreme Court determined that deleting "all county and municipal officials" did not destroy the main purpose or scheme of the Act, and the supreme court let the remainder stand as fulfilling the legislative intent. This court feels constrained to take the Act as it now appears before us as interpreted, construed, and modified by the Georgia Supreme Court; therefore, the classification tested will be the separate treatment accorded the judicial branch as opposed to that given the legislative and executive branches. It should be noted also that in Fortson v. Weeks, *supra,* the Georgia Supreme Court held that the district attorney is considered a quasi-judicial officer, and for the purpose of this classification, we must adhere to that state court determination.

At the outset it should be made clear that this court does not sit as a super-legislative body, and it is not for the court to determine and rule upon the wisdom of the Act or decide whether it does what it sets out to do in the best possible manner. Even if the Act is imperfect in some or many ways, it is our duty only to determine if the classification bears a reasonable relationship to a legitimate state purpose. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

The distinction and separation of powers between the legislative, executive, and judicial branches of government has been a cornerstone of our constitutional form of government from its inception. The United States Constitution provides for the separate powers in three separate articles. The Georgia Constitution even has a separate constitutional provision expressly providing for the continued separation of such powers. *See* Ga.Code Ann. § 2–123. Const. art. I, § I, par. 23. This court is of the opinion that this basic principle of separation of the three branches of government alone is sufficient to satisfy the requirement of a reasonable basis for legislation treating one or all of the separate branches differently. If the Georgia General Assembly has determined that the purpose of this Act "to protect the integrity of the democratic process and to insure fair elections" can be accomplished at the present time by the inclusion of only the state officers of the legislative and executive branches, this court cannot say this is invidiously discriminatory and arbitrary. As the Supreme Court said in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (and) quoted with approval in Morey v. Doud, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1 L.Ed.2d 1485 the test for discrimination is as follows:

1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wise scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not

offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

Given this test, it can be said that this Act violates the equal protection clause only if there is *no possible state of facts* to sustain it. This court feels there is a state of facts to justify this classification. In fact, if the judicial branch had been covered by the Act, somewhat of an anomaly would have existed. The Code of Judicial Conduct adopted by the Georgia Supreme Court on December 17, 1973, effective January 1, 1974, (*see* 231 Ga. A1–A15) sets forth rules of conduct for judges and candidates for election to judicial office concerning many matters, including their political conduct. Canon 7, subd. B(2) specifically provides that a candidate for a judicial office should not solicit or accept campaign funds but requires such be done, if at all, by an established committee of responsible persons. The commentary to this canon, also adopted by the Georgia Supreme Court, further provides that unless a statute requires filing of a list of contributors, the names of such campaign contributors should not be revealed to the candidate. Thus, we have an existing situation where members of the Georgia judiciary do not even know who their campaign contributors are, whereas if they had been covered by the Act, the names of such contributors would be revealed to them. This provision alone certainly establishes a rational basis for the classification made.

District attorneys are not covered under the Code of Judicial Conduct, so the above provision is not applicable as applied to them. This court feels there is a state of facts to sustain the classification as applied to such district attorneys. As mentioned above, the Georgia Supreme Court has classified district attorneys as quasi-judicial officers and considered them part of the judicial branch. Unlike the legislative and executive officials covered by the Act, the district attorney does not pass laws nor establish state or departmental policy. Also the district attorney, as an officer of the court, is subject to the control of the Georgia Supreme Court with respect to his conduct. Given the constitutional separation of powers, the distinction in the functions performed by the district attorney and the regulation of his conduct by the Georgia Supreme Court, this court cannot say that the classification is so arbitrary as to result in invidious discrimination.

It should be kept in mind that we are here dealing with reform legislation, and the United States Supreme Court recognizes that "reform may take one step at a time, addressing itself to a phase of the problem which seems most acute to the legislative mind." Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); Morey v. Doud, *supra.* Whether the Georgia General Assembly will determine that judicial officers should be covered by the terms of the Act at some future date, whether it determines judicial elections pose part of an evil that should be attacked, we do not surmise; but "a legislature need not run the risk of losing an entire remedial scheme simply because it failed . . . to cover every evil that might conceivably have been attacked." McDonald v. Bd. of Election, 394 U.S. 802, 809, 89 S.Ct. 1404, 1409, 22 L.Ed.2d 739 (1969). This court holds there is no violation of equal protection in the classification made by the Act.

## FIRST AMENDMENT RIGHTS OF ASSOCIATION

Plaintiff finally contends that because he is a very controversial candidate, the Act's requirement of listing the name, amount, and address of contributors contributing $101 or more to his campaign would subject such contributors to ha-

rassment and persecution, thus depriving them of their first amendment right of free speech and association. In support of his claim plaintiff relies only on the case of NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), although we assume he also relies on its progeny.

NAACP v. Alabama, *supra*, and its progeny have established beyond doubt that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id.* at 460, 78 S.Ct. at 1171. It is further established that where a group is engaged in advocacy of particular beliefs, whether they be political, economic, religious, or cultural, compelled disclosure of affiliation with such a group constitutes a restraint on one's freedom of association. NAACP v. Alabama, *supra.* *See also* Gibson v. Florida Legislative Comm., 372 U.S. 539, 83 S.Ct. 889, 9 L. Ed.2d 929 (1963), NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Louisiana v. N.A.A.C.P., 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). While each of these cases dealt with membership in the N.A.A.C.P., the right of freedom of association is not so limited. *See* Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Pollard v. Roberts, 283 F.Supp. 248 (E.D. Ark. 1968) (3 Judge) aff'd 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).

There can be little doubt that this right of freedom of association extends to the right of individuals to participate in political activity. While each of the above cited cases dealt with actual membership in an association or organization, membership in and of itself was not the crucial point, but rather the fact that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association . . . ." NAACP v. Alabama, 357 U.S. at 460, 78

S.Ct. at 1171. Thus, the right to join together to support or advance particular beliefs and ideas should be protected by this principle, whether it be through membership in an organization furthering those beliefs or through contributions to a campaign of one who espouses those beliefs and ideas. Either way, individuals are attempting to further their views and beliefs. It might be true that some may contribute to all candidates to be assured of "being on the winning side" or may just contribute to the expected winner for the same reason or may contribute to a particular candidate for reasons other than those related to his beliefs and ideas; however, this court feels that a sufficient number of contributors contribute to a political candidate to further the ideas, beliefs, and platforms of that candidate, and in so doing they further their own beliefs and exercise their right to participate in the political process. We thus feel that compulsory disclosure of names of such contributors may in some instances infringe on contributors' constitutionally protected right of association.

But, as was recognized in Communist Party v. Subversive Activities Control Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961), recognition of the fact that there may be such an infringement is not determinative of the issue but is merely a point of reference from which to begin analysis. There is no absolute right on the part of individuals to bar a disclosure which infringes on his first amendment right of association. Against any impediment to this first amendment right which a particular statute creates, there must be considered the importance and value to the public of the goal which this statute accomplishes. Communist Party v. Subversive Activities Control Bd., *supra;* American Communications Assn. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 625 (1950). These considerations were not limited to cases involving the Communist party but rather reveal a general principle to be applied. In NAACP v. Alabama, *supra,* Bates v. Little Rock, *supra,* and NAACP v. Button, *supra,* the attempts to have

the membership lists of the N.A.A.C.P. were denied not because there was an absolute right to withhold such but because the Supreme Court found that there did not exist a sufficient state interest to justify the infringement sought. In Shelton v. Tucker, *supra*, Louisiana v. NAACP, *supra*, and Gibson v. Florida Legislative Comm., *supra*, the Supreme Court recognized that in those instances there existed sufficient state interest in the purpose sought by the disclosures but denied the attempts to gain such disclosures because there was not a sufficient connection or nexus between those disclosures and that legitimate government purpose.

[ ] A study of these cases in connection with American Communications Assn. v. Douds, *supra*, and Communist Party v. Subversive Activities Control Bd., *supra*, reveals a two-tier test to be applied to cases in this area in order to determine whether or not the infringement of first amendment rights is permissible. First, there must be shown to exist a significant or compelling state interest in the purpose sought to be served by the state regulation or statute. If such a state interest exists, then inquiry proceeds to see that the second tier is satisfied; that there must exist a substantial connection or nexus between the disclosure sought and the purpose for which the disclosure is made. In the case *sub judice* the Act in question requires disclosure of campaign contributions of $101 or more for the stated purpose of protecting "the integrity of the democratic process and to insure fair elections." There can be little doubt that the state has a compelling interest in preserving the democratic process and insuring fair elections, and that the Georgia General Assembly has ample authority, under its police power to regulate elections, to enact legislation to fulfill those purposes. Burroughs and Cannon v. United States, 290 U.S. 534, 54 S.Ct. 287, 78 L.Ed. 484 (1934); Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884). The requirement of disclosure of campaign contributors was expressly held by the United States Supreme Court to be within the police power of Congress in *Burroughs, supra,* where the Court said there was ample congressional power "to preserve the departments and institutions of the general government from impairment or destruction, whether threatened by force or by corruption." *Id.* at 545, 54 S.Ct. at 290. *See also* United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). *Burroughs* dealt with the Federal Corrupt Practices Act of 1925, 2 U.S.C. § 241 et seq. (now repealed and replaced by a more comprehensive disclosure law, *see* 2 U.S.C. § 431 et seq.) requiring, *inter alia,* certain disclosures of contributors contributing more than $100. While the issue of possible first amendment violations was not raised or decided by the Court, *Burroughs* firmly establishes the power of the legislature under its police power to enact such legislation and leaves no doubt that the purpose of preserving the democratic process from corruption and ensuring fair elections is a compelling governmental interest. The right of free speech and association is dependent upon the power of constitutional government to survive. If it is to survive, it must have the power to preserve the democratic process. That this is a compelling governmental interest should be self-evident.

[ ] Thus satisfying the first tier of the test by finding sufficient state interest, it next must be determined whether there is a substantial relationship between the disclosures allowed by the Act and the above stated purpose. The Act does not require disclosures of all contributions but only of those of $101 or more. Thus the Georgia General Assembly has made a legislative determination that $101 is the cut-off point above which disclosures must be made in order to achieve their stated purpose. This court recognizes that a cut-off point had to be established somewhere. There is no doubt that all campaign contributors giving $101 or more do not make such contributions in an attempt to buy influence and to corrupt the elective process; however, for the legislation to be valid, there need be no showing that *all*

71
3

would be so inclined. *See* American Communications Assn. v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 625 (1950); Bd. of Governors v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947). This court views the $101 or more threshold as a rational attempt by the Georgia General Assembly to establish a level of contribution that will attract the attention of the candidate and thus begin to satisfy the goals of the statute. This court notes that federal judges, under court rules, disclose gifts over $100, that Georgia judges must do the same under the Code of Judicial Conduct, that the Federal Corrupt Practices Act of 1925, *supra,* required disclosures of contributions over $100, and that the new Federal Elections Campaigns statute, 2 U.S.C. § 431 et seq., requires disclosures of contributions over $100.

Thus, this court holds that there is nothing arbitrary about setting the disclosure cut-off at $101. Deciding this, to satisfy the second tier of the test, it must be shown that there is a sufficient relationship between the disclosure itself and the purpose of the Act—that of preserving the democratic process, ensuring fair elections, *a fortiori* preventing corruption. In Shelton v. Tucker, *supra,* there was not sufficient connection in a disclosure of every organizational and associational tie—social, professional, political, avocational, or religious—and a teacher's occupational fitness. In Gibson v. Florida Legislative Comm., *supra,* there was not a sufficient nexus between the N.A.A.C.P. and the Communist Party to uphold the disclosure requirement. In Pollard v. Roberts, 283 F.Supp. 248 (E.D. Ark.1968) aff'd 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) a three-judge district court did not allow a prosecuting attorney to gain records of all contributors to the Republican Party of Arkansas, since this would infringe on first amendment rights of association and political activity. The court found that there was not sufficient connection to the investigation of vote buying. However, *Pollard* dealt with a single investigation, of a single party, dealing with vote buying. The court recognized there

was no rational connection between vote buying and a list of contributors but rather the investigator needed to know whether votes were bought, whose votes were bought, and who bought them. *Pollard* explicitly recognized that it did not deal with legislation such as is before this court and expressed the feeling that there might be much merit in general application legislation such as the Georgia Campaign Financing Disclosure Act where the state determines as a matter of public policy records of campaign contributions should be made public.

That this second tier of the test—the relationship between the disclosure and the purpose of the Act—is satisfied in this case is established by the reasoning in *Burroughs, supra,* where the Supreme Court said:

Congress reached the conclusion that public *disclosure* of political contributions, together with the names of contributors and other details, *would tend to prevent the corrupt use of money to affect elections. The verity of this conclusion reasonably cannot be denied.* When to this is added the requirement . . . that the treasurer's statement shall include full particulars in respect of expenditures, it seems *plain that the statute as a whole is calculated to discourage the making and use of contributions for purposes of corruption.*

290 U.S. at 548, 54 S.Ct. at 291 (emphasis supplied). The same applies equally to the case *sub judice.* This court has no doubt that the disclosures sought bear a substantial connection to preventing corruption in politics, to preventing influence buying, to preventing favoritism in dealings with the state, to preventing the buying of appointments and positions; in short, to preserving the democratic system and ensuring fair elections.

This court recognizes that *Burroughs* did not deal with first amendment issues and was decided in 1934, well before NAACP v. Alabama, *supra,* and its progeny established the right of association asserted by the plaintiff in this case. However, while not dealing with first

amendment issues *per se,* the Supreme Court clearly found the two requirements that it later enunciated as necessary to meet the two-tier test for a valid infringement on first amendment rights. The principles it established as far as the compelling governmental interest in ensuring fair elections free from corruption and the substantial connection between the disclosure there sought and the purpose there to be accomplished [which, incidentally, are the same as exist in the case *sub judice*] remain steadfast. Those established principles are today merely applied to the test the Supreme Court later established in NAACP v. Alabama and its progeny.

This court thus holds that the purpose of the Act discloses a compelling state interest and that there is sufficient nexus between the disclosures permitted and this state interest so as to make any infringement on the first amendment right of speech and association constitutionally permissible.

For the foregoing reasons plaintiff's motion for a permanent injunction enjoining the enforcement of the Campaign Financing Disclosure Act is denied, and the defendant's motion to dismiss is granted.

It is so ordered.