**UNITED STATES v. PAINTERS LOCAL UNION NO. 481 et al.**

No. 139, Docket 21162.

United States Court of Appeals

Second Circuit.

Feb. 8, 1949.

J. Albert Woll, Herbert S. Thatcher and James A. Glenn, all of Washington, D. C. (William S. Gordon, Jr. and Mary C. Fitzgerald, both of Hartford, Conn., of counsel), for defendants-appellants.

Alexander M. Campbell, Asst. Atty. Gen., Adrian W. Maher, U. S. Atty., of New Haven, Conn. (George R. Gallagher and Rosalie M. Moynahan, Attorneys, Department of Justice, both of Washington, D. C., of counsel), for United States.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendants were indicted for violations of Section 313 of the Federal Corrupt Practices Act, as amended by Section 304 of the Labor Management Relations Act, 1947, commonly known as the Taft-Hartley Act, 2 U.S.C.A. § 251, [now 18 U.S.C.A. § 610.]. Section 313, as so amended, with the additions made by the 1947 Act in italics is set forth in the margin.[1]

[1] Sec. 313. "It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution *or expenditure* in connection with any election to any political office, *or in connection with any primary election or political convention or caucus held to select candidates for any political office,* or for any corporation whatever, or any labor organization to make a contribution *or expenditure* in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, *or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices,* or for any candidate. political committee, or other person to accept or receive any contribution prohibited by this section. Every corporation or labor organization which makes any contribution *or expenditure* in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution *or expenditure* by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both. *For the purposes of this section 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.*" 61 Stat. 159.

It prohibits corporations and labor organizations from making contributions or expenditures in connection with federal elections, primary elections, political conventions or caucuses.

The indictment contained six counts, two charging the Painters Local Union No. 481 with making an expenditure to purchase a political advertisement in a newspaper and to purchase radio time for a political broadcast in connection with a convention to be held to select candidates for the office of Presidential and Vice-Presidential electors; two counts with making similar expenditures in connection with a convention to be held to select candidates for Representatives in Congress; and two counts charged the defendant O'Brien, as President of the Union, with consenting to the expenditures made by the Union.

After the court had denied a motion to dismiss the indictment on constitutional grounds the defendants pleaded not guilty and waived trial by jury. The facts are not in dispute and are based upon a stipulation entered into by the parties at the trial, which resulted in a finding by the court of which the following is a summary:

The Union was an organization of employees in the painting trades in Hartford, Connecticut, area, and was a labor organization within the meaning of Section 313. On or about January 2, 1948, the Union expended its funds to pay the costs of a political advertisement in The Hartford Times, of Hartford, Connecticut, a daily newspaper of general circulation, and to pay the costs of a political radio broadcast over Radio Station WKNB, of New Britain, Connecticut, a commercial radio station. The defendants had no financial or other interest, direct or indirect, in The Hartford Times or Station WKNB. The advertisement and the radio broadcast advocated the rejection of Senator Robert A. Taft as a candidate for the Republican nomination for President of the United States and his defeat in the 1948 presidential election, if nominated; the advertisement and broadcast also advocated the rejection of the six Connecticut incumbent Congressmen as candidates for reelection on the Republican ticket and their defeat in the 1948 Congressional elections, if nominated. The advertisement and broadcast were directed specifically to the Connecticut Republican Party Convention to be held in May of 1948, the Republican National Convention to be held in June of 1948, the Connecticut Republican Congressional Conventions to be held in the summer of 1948, and the election to be held on November 2, 1948, for presidential electors and Representatives in Congress. The expenditures for the advertisement and broadcast, and the scope, purpose and subject-matter thereof, were duly authorized by the Union at a special membership meeting. The cost of the political advertisement was $111.14, and the cost of the radio broadcast was $32.50. Both were paid for by checks signed for the defendant Union by its President, the defendant O'Brien, duly authorized. The funds were derived from the general treasury of the defendant Union; the general treasury, in turn, was derived from dues and fees paid by members of the Union. Except for a small portion deposited in a special sick benefit fund, no portion of the dues and fees was allocated for any particular account or activity of the Union. The defendant O'Brien, in his capacity as President of the defendant Union, consented to the expenditures by the Union for the advertisement and radio broadcast. Both at the close of the Government's case and at the close of all the evidence, the defendants moved for judgment of acquittal; the motions were denied. The court thereupon noted a verdict of guilty. A motion was then made by the defendants in arrest of judgment, which was denied by the court. Each of these motions was predicated solely on the constitutional grounds initially raised by the motion to dismiss the indictment. Exceptions were taken by the defendants to the denial of each of their motions. The court thereupon sentenced the defendant Union to pay a fine of $200 on each of four counts of the indictment, and sentenced the defendant O'Brien to pay a fine of $100 on each of the two counts of the indictment and judgments were entered accordingly.

The defendants each appealed from the judgment of conviction upon the ground

that amended Section 313 violated the First, Fifth, Sixth, Ninth and Tenth Amendments of the Constitution of the United States. They made no contention that the section, if valid, was not violated, although such a contention, so far as tenable, would seem to be the more natural approach to establish their innocence. A similar course was adopted by the defendants in United States v. CIO, 335 U.S. 106, 68 S.Ct. 1349, as particularly adverted to by Mr. Justice Frankfurter, 335 U.S. at pages 128, 129, 68 S.Ct. at page 1360, yet the court on its own motion determined that the statute was inapplicable.

In the case at bar we have a prosecution of a relatively small union because of trifling expenditures for a newspaper advertisement and a broadcast criticizing candidates for federal elective offices owing to the alleged hostility of the candidates to the interests of unionized labor. In the decision in United States v. CIO, 335 U.S. 106, 68 S.Ct. 1349, a majority of the Supreme Court held that a publication in a union newspaper which was distributed to members and a few other persons, did not fall within the prohibition of the statute. While Mr. Justice Reed, who wrote the opinion in that case, laid some stress upon the fact that the publication was by the union itself and reached a somewhat limited class of readers, he nowhere said that a publication in an ordinary newspaper paid for out of the funds of a union would not also be outside of the coverage of the Act. Indeed, at one point he said: "Apparently 'expenditures' was added [by the amendment] to eradicate the doubt that had been raised as to the reach of 'contribution,' not to extend greatly the coverage of the section." 335 U.S. at page 122, 68 S. Ct. at page 1357. It seems impossible, on principle, to differentiate the scope of that decision from the case we have before us. It is hard to imagine that a greater number of people would be affected by the advertisement and broadcasting in the present case than by publication in the union periodical dealt with in the CIO litigation. In a practical sense the situations are very similar, for in the case at bar this small union owned no newspaper and a publication in the daily press or by radio was as natural a way of communicating its views to its members as by a newspaper of its own.

In each instance, it seems unreasonable to suppose that the members of the union objected to its policy in criticizing candidates for federal offices. In the CIO case this was thought to be true because the publication was a "normal organizational activit[y]". See 335 U.S. at page 123, 68 S. Ct. at page 1357. In the case at bar, the expenditures were authorized by a vote of the union members at a meeting duly held.

In view of the foregoing, the expenditures cannot be regarded as prohibited by the statute. Even if the contention that the financial or group power exercised over elections through labor unions may be curbed, either by limiting the amount of their expenditures or by prohibiting them altogether, be thought reasonable, an interpretation of the statute which would allow such expenditures in the case of a union publication and prohibit them when made by a union through the use of an independent newspaper or radio station seems without logical justification; nor is such a differentiation suggested by the apparent purposes or by the terms of the statute or by its legislative history.

We should bear in mind the further important consideration that all of the Justices of the Supreme Court who participated in the CIO decision regarded the prohibition of the statute if applied to the facts of that case either as involving an undue abridgment of the rights of free speech, free press, and free assembly, or at best as of exceedingly doubtful constitutionality. Because of the similarity of the facts before us to those in the CIO decision above-mentioned we do not feel free to regard the issue of constitutionality as one completely of first impression, as did Judge Hincks in his thoughtful opinion. Under the circumstances we are constrained to hold that the statute did not cover the publications effected by the defendants in the case at bar.

For the foregoing reasons, the judgment is reversed with directions to dismiss the indictment.