**UNITED STATES of America,**
Plaintiff,

v.

**INTERNATIONAL UNION UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW–CIO) Defendant.**

No. 35004.

United States District Court
E. D. Michigan, S. D.

Feb. 3, 1956.

primary and general elections. It is alleged that defendant paid a specific amount from its general treasury fund to Luckoff and Wayburn Productions, Detroit, Michigan, to defray the costs of certain television broadcasts sponsored by the Union from commercial television station WJBK.

It is charged that the broadcasts urged and endorsed selection of certain persons to be candidates for representatives and senator to the Congress of the United States and included expressions of political advocacy intended by defendant to influence the electorate and to affect the results of the election.

It is further charged that the fund used came from the Union's dues, was not obtained by voluntary political contributions or subscriptions from members of the Union, and was not paid for by advertising or sales.

### Findings of Fact

For the purposes of this motion the charges alleged are taken as true. United States v. Jones, 5 Cir., 207 F.2d 785; Knoell v. United States, 3 Cir., 239 F. 16; United States v. Van Auken, 96 U.S. 366, 24 L.Ed. 852.

The contention of defendant is, first, that the expenditures, admittedly so made, are not the type of expenditures intended to be covered and prohibited by Section 610 of the Act. Six other reasons for dismissing the indictment follow, and all are to the effect that should this court find that the expenditures made by defendant are covered by Section 610, then the provisions of that section are unconstitutional because—

(a) They abridge both freedom of speech and of the press, peaceable assemblage and right of petition, in violation of the First Amendment;

(b) They unlawfully abridge the right to choose senators and representatives in Congress as guaranteed by the Seventeenth Amendment;

(c) They create an arbitrary and unlawful classification and discriminate against labor unions, in violation of the Fifth Amendment;

---

Fred W. Kaess, U. S. Atty., George E. Woods, Chief Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Harold A. Cranefield, Joseph L. Rauh, Jr., Detroit, Mich., for defendant.

PICARD, District Judge.

Motion to dismiss the indictment in the above matter, each of its four counts alleging a separate violation of Section 610, Title 18 of the U.S.C.A., Federal Corrupt Practices Act, prohibiting political expenditures by labor unions. The pertinent section is set out in the appendix together with the Act's definitions of "expenditure" and "contribution". Section 591.

Here the specific charge is that the "expenditure" violation came in connection with the selection of candidates for a senator and representatives to the United States Congress during the 1954

(d) They are arbitrary and capricious, and deprive defendant and its members of liberty and property without due process of law—in violation of the Fifth Amendment;

(e) The statute is vague and indefinite, in violation of the Fifth and Sixth Amendments; and finally

(f) The provisions invade the rights of defendant and its members, under the Ninth and Tenth Amendments.

It will be particularly noted that six of the seven reasons advanced for dismissing the indictment are based upon the alleged unconstitutionality of the law. Therefore it becomes our duty under the decisions to determine whether or not defendant's first objection is valid for if we are able to determine that the conduct complained against is not proscribed by the Act, without passing upon the law's constitutionality, we must do so. United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849; United States v. Petrillo, 332 U.S. 1, at page 10, 67 S.Ct. 1538, 91 L.Ed. 1877; United States v. Rumely, 345 U.S. 41–45, 73 S.Ct. 543, 97 L.Ed. 770; Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598.

## Conclusions of Law

In answer to that first objection we recall very briefly certain salient features in the history of the Federal Corrupt Practices Act. The first legislation of this type was enacted in 1907 and did not include labor unions in its prohibition; neither did it include the word "expenditure" and as pointed out in Newberry v. United States, 256 U.S. 232, 41 S.Ct. 469, 65 L.Ed. 913, it did not apply to "primaries". Admittedly it was not until 1947 that the word "expenditure" was written into the Act which then covered "primaries" and "contributions" of all kinds with a definition of the distinction noted between "expenditure" and "contribution". Since that final enactment (1947), which re-adopted the War Labor Disputes Act, 50 U.S.C.A. Appendix, § 1501 et seq., including unions and adding primaries, three tests

and interpretations of what the law meant have been made, one by the Supreme Court of the United States, one by the Court of Appeals of the Second Circuit, and one by a District Court.

We examine those decisions.

United States v. C. I. O. (Murray), 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849.

The first interpretation of this statute (June 1948) was United States v. C. I. O. and Philip Murray, its president, 335 U.S. 106, 68 S.Ct. 1349, 1358. In that instance the C. I. O. had published a front page statement by Mr. Murray urging election of a certain congressional candidate in Maryland. This publication occurred in its regular C. I. O. News, a weekly, owned and published by the C. I. O. with money coming from the general funds of the Union (as in the case at bar) but with this additional feature; this particular issue of the News went not alone to the C. I. O. membership but extra copies were run off and distributed to the public.

On defendant's motion the District Court, 77 F.Supp. 355, dismissed the indictment on the ground that the statute was unconstitutional as an unwarranted abridgement of the First Amendment. On appeal the Supreme Court of the United States held that it had long been a policy that if the statute could be interpreted in a manner avoiding the constitutional question it should be, and the court, speaking through Mr. Justice Reed with these words, held that the prohibition in the Act against "expenditure" did not include an "expenditure" such as the one involved;

"We are unwilling to say that Congress by its prohibition against corporations or labor organizations making an 'expenditure in connection with any election' of candidates for federal office intended to outlaw such a publication."

Justice Frankfurter wrote a concurring opinion.

Four other Justices, however, to-wit Mr. Justice Black, Mr. Justice Douglas

and Mr. Justice Murphy, speaking through Mr. Justice Rutledge, agreed the indictment should be dismissed but on the ground that the entire section 313 (610) was unconstitutional. Meeting the question full on they said:

"If § 313 as amended (610) * * * can be taken to cover the costs of any political publication by a labor union, I think it comprehends the 'expenditures' made in this case. By reading them out of the section, in order not to pass upon its validity, the Court in effect abdicates its function in the guise of applying the policy against deciding questions of constitutionality unnecessarily. I adhere to that policy. But I do not think it justifies invasion of the legislative function by rewriting or emasculating the statute. This in my judgment is what has been done in this instance."

Mr. Justice Rutledge also notes that there is nothing in the Act as adopted that makes the "source" of the funds important. If the Union sponsored the "ad", it was immaterial whether the funds used came either through dues, from newspaper subscriptions, or a special fund raised for that purpose, although Senator Taft, who assumed the burden of defending this particular section in the Senate, differentiated between funds used from dues, and those subscribed for or raised for a certain special purpose. In that case also (C. I. O. News, supra) it was emphasized that the word "expenditure" was merely added to the Act to cover situations not previously included within the accepted legislative interpretation of "contribution". Justice Reed said

"Apparently 'expenditures' was added to eradicate the doubt that had been raised as to the reach of 'contribution,' *not to extend greatly the coverage of the section.*" (Emphasis ours.)

Therefore we find that when the first decision interpretive of this Act was announced by the Supreme Court of the United States one District Judge and four Justices of the Supreme Court had held the section unconstitutional and five Justices of the Supreme Court refused to pass upon its constitutionality as unnecessary, but nevertheless dismissed the indictment because it did not state a cause of action, to-wit, "expenditure" didn't include the type of "expenditure" made by the Union, although authorized by its president.

It will also be noted that Mr. Justice Reed's majority opinion states that unless the legislation is so construed

*"the gravest doubt would arise in our minds as to its constitutionality."* (Emphasis ours.)

United States v. Painters Local Union No. 481, 2 Cir., 172 F.2d 854.

The second case of interpretation was United States v. Painters Local Union No. 481, 172 F.2d 854, 856, decided by the Second Circuit Court of Appeals in 1949. The charge was against the Union and its President for placing and paying for a political ad in a *daily newspaper of general circulation and a political broadcast over a commercial radio station,* both out of funds from the general treasury of the Union.

In our opinion this case is on all fours with the case at bar except that it was a "television" broadcast instead of "radio"—which difference we do not deem important.

In Painters Local Union, supra, motion for dismissal by defendant was denied by the District Court, 79 F.Supp. 516, which held the act constitutional. The question of whether these were "expenditures" within the meaning of the act was not raised by defendant nor discussed by the District Court and the case came to the Second Circuit supposedly solely on constitutional issues. Nevertheless that Court of Appeals reversed the District Court and, using the rationale of the Supreme Court in the C. I. O. opinion, supra, ruled on the scope of the statute and not on its constitutionality. It held that such political advertisements in a media of information commercially owned and of general cir-

culation were not prohibited "expenditures". As Judge Hand stated

> "It seems impossible, on principle, to differentiate the scope of that decision (referring to U. S. v. C. I. O., supra) from the case we have before us."

We feel compelled to adopt that same language and repeat that the facts in United States v. Painters Local Union No. 481, supra, and the matter before us are as alike as two peas in a pod.

Nor must we neglect to add that the Court of Appeals (Second Circuit) declared that it too had grave doubts concerning the constitutionality of the Act if the word "expenditure" were broadly construed.

It is interesting to note that here the government had a case made to order for appeal but no petition for certiorari was filed to the Supreme Court. See Mr. Justice Frankfurter's opinion, Andres v. United States, 333 U.S. 740, at page 756, 68 S.Ct. 880, 92 L.Ed. 1055, concerning a similar situation.

The government insists that a decision of the Second Circuit is not an authority we must follow. With this statement we agree. But District Courts have generally followed decisions of other Courts of Appeals which would decide the matter and where their own circuit had not yet spoken. King v. United States, D.C., 10 F.Supp. 206; Flannery v. United States, D.C., 25 F.Supp. 677; The Bleakley No. 76, D.C., 56 F.2d 1037. It is on the theory that such procedure is in the interest of promoting a single system for the administration of justice by having a uniform construction, and as stated in Martyn v. United States, 8 Cir., 176 F.2d 609, 610

> "We would not be justified in adopting a different construction of the Act than that which prevails in the Fourth and Ninth Circuits unless we were able to demonstrate that that construction was clearly wrong."

United States v. Construction & General Laborers Local Union No. 264, D.C., 101 F.Supp. 869.

The third and final decision interpreting Section 610 is United States v. Construction & General Laborers Local Union No. 264 and two officers, D.C., 101 F.Supp. 869, 873, decided in 1951. It goes further than the case at bar. That indictment involved twelve counts and charged various kinds of "contributions or expenditures" by defendants contrary to the provisions of the Federal Corrupt Practices Act. In the case at bar there is no charge of "contribution" violation. The entire charge is devoted to "expenditure".

In General Laborers, supra, the government proved that the President, business agent of the Union, had been a candidate for Congress, that the Union had paid certain expenses connected with his campaign, and that three of the Union employees, two of whom were on the Union's regular payroll, had been very active in his support. On Union time and increased pay, they had put up posters, passed out cards and pamphlets, driven voters to register and to the polls election day, and had managed the "Freedom Train", a replica of the original Freedom Train, the vans of which contained copies of historical American documents as well as their candidate's campaign literature. One man on Union pay had worked around the candidate's home cutting the grass and in one instance $200 was paid by the Union to some worker in connection with the candidate's campaign. There is no totalling up or reckoning of just how much money was expended directly or indirectly by the Union in this campaign but the court, rendering its opinion, stated

> " * * * it is hard to conceive that the Congress had in mind when it enacted this particular law, that an uncertain, insignificant amount such as is involved here should be considered as an expenditure and used as a basis for a criminal prosecution."

Here again the Court takes issue with the broad construction of the word "expenditure" urged by the government, adding

"Reiterating, it is difficult for me to believe that the Congress, with its vast knowledge of the practical application of its acts, intended such a restriction as is sought to be placed upon labor unions as here."

■ However, the distinction made by the District Court in the General Laborers case, supra, that it is not the "type" of activity that Congress had in mind but the "degree" of activity that should govern, does not impress us. We do not find anything in this Act that is authority for such a statement. The rule of de minimis non curat lex does not apply to criminal cases. United States v. Construction & General Laborers, supra.

Effect of These Three Decisions?

Having considered defendant's three authorities we find no case cited by the government otherwise interpreting this section of the Act, and its attempt to distinguish those cases from the case at bar are either futile or picayune. The government has, however, presented a very scholarly brief and advanced many arguments for denying the motion, tracing the history and objectives of this legislation from the first enactment of the Federal Corrupt Practices Act in 1907 when "money contributions" by corporations were prohibited, right down to the present amended version passed in 1947 where the word "expenditure" was added as a supplement to "contribution".

■ None of these three above cited cases, and surely not this court, challenges the right of Congress to pass any and all legislation deemed necessary to keep elections free from taint of fraud or coercion unless, of course, in those activities Congress violates provisions of the Constitution. Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274;

United States v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L.Ed. 857; Burroughs (Cannon) v. United States, 290 U.S. 534, 54 S.Ct. 287, 78 L.Ed. 484; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368.

That is not the point at issue. We can assume that Congress wrote the law it wanted and still we find that in all three cases interpreting that latest Congressional effort, the first before the Supreme Court of the United States, the second before the Second Circuit Court of Appeals, and the third before a District Judge, each court determined that Congress did not intend to include as an expenditure the respective violations charged therein—in each case the same charges as here—and all Justices and Judges stated that in their opinion any other interpretation would bring into question the constitutionality of the section—a possible defense, incidentally, that they indicated would have a great deal of merit. And so anxious were the higher courts to avoid testing the constitutionality of the Act challenged in two of those three cited decisions, that they, of their own volition, changed the ground for sustaining the dismissal of the indictment to avoid the constitutional questions.

It is true that stress is laid in each of those three cases upon the alleged "triviality" of the charges; but, we ask, where is the line to be drawn? There is nothing in the Act that sets out any limit of demarcation of the amount expended before it becomes an "expenditure"; and this appears to this court to be very important. There is no minimum or maximum set on what is or is not "expenditure" and we believe that this court would be presumptuous in trying to write into the Act something that Congress avoided doing, evidently because what it enacted might be unconstitutional, or to indulge in a new theory of what is or is not an expenditure, not suggested by our higher courts.

According to the authorities the Union was not making an expenditure on behalf

of a political candidate. It desired to inform its members and others of the position of the Union on those seeking certain federal offices. It was exercising the right of free speech. The question then might present itself as to whether or not what the Union did was in fact "make a contribution". This might be important if the Union were charged with "making a contribution". It is not. It was so charged in United States v. Construction & General Laborers Local Union No. 264, supra, on very similar facts, but still the court held that its acts did not encompass either a "contribution" or "expenditure".

What then did Congress intend by "expenditure"? At least one court has enumerated possible acts of "expenditure" under Section 610 but we will not attempt it. What we will say, however, is that the Congress did not intend to write an unconstitutional law. United States v. C. I. O., supra, 335 U.S. at page 120, 68 S.Ct. 1356. And it has been pointed out in the three above cases and in the debates of Congress, that to interpret this statute otherwise than has been done, is to jeopardize not only the right of every newspaper to print any political editorial during a campaign in which federal officers are elected, advocating one adversary over another, but it may also make remarks or speeches of any delegate or representative to a convention or gathering (other than a political meeting) subject to this Act, where the expenses of that delegate are being paid for by a union or corporation. (See the three cases cited supra and Congressional Record of Debates.)

It is also well to know that the arguments so ably advanced by the government's briefs were all presented to the courts in the three above cases, and still the decision went against the government in each case. In fact, Mr. Warren Olney III, appearing before Congress admitted that the Act was very unsatisfactory and practically unenforcible. What possible justification could there be for this court to arbitrarily make, either

an "addition" to the Act, or give it an "interpretation" which up to this day has not been attempted by either the Supreme Court of the United States, one of our Courts of Appeals or one of our District Judges? Undoubtedly there will be those who will not agree with the Supreme Court's interpretation of the word "expenditure" but it may well be that time will prove that the real intent of Congress, as stated and restated in the government's briefs, to-wit to destroy the power of any single group to control elections and to make more equal the forces which may battle for victory, will best be attained because of that interpretation. This has happened before.

### Conclusion

As is our duty, we try to follow the law as laid down by our Supreme Court and there is no difficulty in doing so here. What the Supreme Court has said is not ambiguous to us.

If the District Judge can decide this case without ruling on the constitutional questions raised, he should do so. Since we believe that we can, we must not avoid our duty and make it necessary for the higher court to switch the grounds upon which the indictment must be dismissed. Our decision is that under the authorities the "expenditures" charged in this indictment are not expenditures prohibited by the Act. If appealed our Supreme Court may determine otherwise and may at that time decide upon the law's constitutionality or remand to us. Until the Supreme Court enlightens us further, we have no other alternative but to follow the above authorities.

An order, dismissing the indictment, may be presented for our signature.

### Appendix
Title 18 U.S.C.A. § 591

"The term 'contribution' includes a gift, subscription, loan, advance, or deposit, of money, or anything of value, and includes a contract,

promise, or agreement to make a contribution, whether or not legally enforceable;

"The term 'expenditure' includes a payment, distribution, loan, advance, deposit, or gift, of money, or anything of value, and includes a contract, promise, or agreement to make an expenditure, whether or not legally enforceable;"

Title 18 U.S.C.A. § 610

"It is unlawful * * * for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"For the purposes of this section 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."