DENNIS, Circuit Judge,
joined by KING, Circuit Judge, dissenting:
I respectfully dissent.
I.
The majority’s decision misinterprets and hobbles Congress’s use of its enumerated and implied constitutional powers to enact the Sex Offender Registration and Notification Act (SORNA or Act) for the purpose of deterring dangerous sex offenders nationwide from moving either intrastate or interstate in evasion of SORNA registration and updating requirements to prey on children and other vulnerable sex crime victims. SORNA establishes a comprehensive federal and state legal system that, inter alia, requires convicted sex offenders to register, and to keep their registrations current, in each locality where they live, work, and go to school, 42 U.S.C. § 16913(a) — (c); withholds federal funds from participating jurisdictions that fail to substantially implement SORNA, id. § 16925(a); requires each participating jurisdiction to enact criminal penalties for the failure of a sex offender to comply with SORNA registration and updating requirements within each jurisdiction, id. § 16913(e); makes it a federal crime for a convicted sex offender who moves in interstate commerce and knowingly fails to abide by the Act’s registration requirements, 18 U.S.C. § 2250(a)(1), (2)(B), (3); and makes it a federal crime for a person convicted as a sex offender under federal law to knowingly fail to abide by SORNA’s registration and updating requirements, id. § 2250(a)(1), (2)(A), (3).
The question raised by Kebodeaux and the majority opinion is whether SORNA’s 18 U.S.C. § 2250(a)(2)(A) can constitutionally apply to a person convicted as a sex offender under federal law, who was released from federal custody prior to the enactment of SORNA, but who knowingly failed to update his registration after an intrastate residence change, as required by SORNA subsequent to its effective date as specified by the Attorney General. 42 U.S.C. § 16913(d). The majority’s answer is that SORNA’s criminal, registration and notification provisions cannot constitutionally be applied to punish a federal sex offender for his -knowing failure to register or update a registration following his intrastate change of residence if he had been released from federal custody prior to SORNA’s enactment on July 27, 2006. The majority reaches this conclusion for two independent reasons:
First, although Congress undisputedly has the implied power under Article I of the Constitution to make criminal laws to govern persons in furtherance of Congress’s enumerated legislative powers, see, e.g., United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 1957, 176 L.Ed.2d 878 (2010), the majority concludes that power cannot be applied to punish a federal sex offender for his knowing failure to update his intrastate residence change under SORNA if he had been released from federal custody prior to the enactment of SORNA on July 27, 2006. Applying the “Comstock considerations,” see id. at 1965, the majority recognizes first that Congress has broad authority to enact legislation under the Necessary and Proper Clause, see id. at 1956; that a statute must consti *257 tute a means that is “reasonably adapted” to an enumerated power; that Congress has a large discretion as to the choice of such means; and that courts must apply a presumption of constitutionality to Congress’s enactments. Maj. Op. 235-36. But the majority finds that the other “Comstock considerations” outweigh that presumption and show that SORNA is not reasonably adapted to Congress’s undisputed Article I power to criminalize federal sex offenses because “[t]he statute’s regulation of an individual, after he has served his sentence and is no longer subject to federal custody or supervision, solely because he once committed a federal crime, (1) is novel and unprecedented despite over 200 years of federal criminal law; (2) is not ‘reasonably adapted’ to the government’s custodial interest in its prisoners or its interest in punishing federal criminals; (3) is unprotective of states’ sovereign interest over what intrastate conduct to criminalize within their own borders; and (4) is sweeping in the scope of its reasoning.” Maj. Op. 245.
Alternatively, the majority concedes that Congress, under its Commerce Clause and Necessary and Proper Clause authority, may (1) “regulate the use of the channels of interstate commerce”; (2) “regulate and protect the instrumentalities of ... or persons or things in interstate commerce, even though the threat may come only from intrastate activities”; and (3) “regulate those activities having a substantial relation to interstate commerce, ie., those activities that substantially affect interstate commerce.” Maj. Op. 245 (alteration in original) (quoting United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)); see also Maj. Op. 245 n. 38 (describing Lopez as “holding that because the Gun-Free School Zones Act does not fall .within any of the three categories, it is an unconstitutional exercise of federal power” (citing Lopez, 514 U.S. 549, 558-59, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626)). But the majority finds that Congress nonetheless lacked the authority to subject federal sex offenders released prior to the July 27, 2006 enactment of SORNA’s registration requirements, 42 U.S.C. §§ 16913-16916, and pertinent criminal provision, 18 U.S.C. § 2250(a)(2)(A), because they, like the statutes that were struck down in Lopez and United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), constitute regulation of only intrastate non-economic activity.
II.
Failing to recognize that statutory interpretation is a “holistic endeavor,” United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); accord United States v. Johnson, 632 F.3d 912, 922 (5th Cir.2011) (same), the majority opinion’s reading of SORNA’s text is incomplete and erroneous. Consequently, the majority fails to properly analyze and understand how Congress rationally and simultaneously adapted SORNA’s provisions to the three constitutional powers they carry into execution: the spending power, the commerce power, and the power to enact criminal laws to further and to prevent interference with its enumerated powers. The majority totally disregards Congress’s use in SORNA of its enumerated power to spend federal funds for the general welfare. Importantly, Congress used its spending power both to establish SORNA’s purpose as a legitimate end of the legislation, and as one of the means, together with its Commerce Clause power and its power to legislate criminal laws to further and protect its enumerated powers, in carrying all of those powers into effect.
*258 The majority analyzes, one at a time, only two congressional powers that SORNA seeks to execute, the Commerce Clause power and power to enact criminal laws pursuant to its enumerated powers, and finds that SORNA is not rationally adapted to execute either power. This analysis is manifestly incorrect, however, because in SORNA, Congress plainly used three, not just two, of its constitutional powers, and it used them simultaneously, not just one at a time. In doing so, Congress reasonably adapted the SORNA provisions as the necessary and proper means of carrying all three powers into effect at the same time. The three powers are Congress’s enumerated spending power, U.S. Const, art. I, § 8, cl. 1, its enumerated Commerce Clause power, id. art. 1, § 8, cl. 3, and its well established implied power to enact criminal laws in furtherance of its enumerated powers, e.g., to regulate commerce, to spend funds for the general welfare, to enforce civil rights, and so forth, see Comstock, 130 S.Ct. at 1957-58 (citing U.S. Const, art. I, § 8, els. 1, 3, 4, 7, 9; id. amends. XIII-XV). Recently, the Supreme Court recognized that SORNA uses these three powers in “seek[ing] to make the preexisting patchwork of federal and 50 individual state registration systems ... more uniform and effective ... by setting forth comprehensive registration-system standards; by making federal funding contingent on States’ bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act’s registration requirements.” Reynolds v. United States, — U.S. -, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012) (citing, inter alia, 18 U.S.C. § 2250(a) (criminal provision), 42 U.S.C. §§ 16911(10), 16913-16916 (registration requirements), and 42 U.S.C. § 16925 (federal funding provision)).
Chief Justice Marshall famously summarized Congress’s authority under the Necessary and Proper Clause in McCulloch v. Maryland, which has stood for nearly 200 years as the Court’s definitive interpretation of that text:
Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional.
17 U.S. 316, 421, 4 Wheat. 316, 4 L.Ed. 579 (1819). Congress’s purpose in enacting SORNA is to “protect the public from sex offenders and offenders against children” by joining and unifying the states and other jurisdictions in establishing a “comprehensive national system” for registration and notification of the public by sexual offenders. 42 U.S.C. § 16901. Thus, SORNA’s purpose constitutes a legitimate end toward which a Congressional law may be directed — the spending of funds for the general welfare — and SORNA’s provisions carry into execution that spending power as well as Congress’s enumerated power to regulate interstate and foreign commerce and its implied power to enact criminal laws in furtherance of those enumerated powers.
The Supreme Court has also held that the Constitution “ ‘addresse[s]’ the ‘choice of means primarily ... to the judgment of Congress. If it can be seen that the means adopted are really calculated to attain the end, the degree of their necessity, the extent to which they conduce to the end, the closeness of the relationship between the means adopted and the end to be attained, are matters for congressional determination alone.’ ” Comstock, 130 S.Ct. at 1957 (alterations in original) (quot *259 ing Burroughs v. United States, 290 U.S. 534, 547-48, 54 S.Ct. 287, 78 L.Ed. 484 (1934)). In my view, Congress did not abuse its discretion in enacting 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a)(2)(A), as part of the interconnected and highly reticulated scheme of SORNA, in order to achieve the goal of establishing a comprehensive national system for registration of, and notification by, sex offenders.
In Sabri v. United States, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), the Court held that “Congress has authority under the Spending Clause to appropriate federal moneys to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare.” Id. at 605, 124 S.Ct. 1941 (emphases added). Similarly, in SORNA, Congress uses its spending power to induce the states and other defined jurisdictions to join in accomplishing its purpose by providing, inter alia, that: a participating jurisdiction that fails to substantially implement SORNA’s requirements shall not receive 10 percent of the federal funds that would otherwise be allocated to the jurisdiction under SORNA, 42 U.S.C. § 16925(a); each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of SORNA, id. § 16912(a); each jurisdiction, other than a federally recognized Indian tribe, shall enact a criminal penalty that includes a maximum term of imprisonment that is greater than a year for the failure of a sex offender to comply with the requirements of SORNA, id. § 16913(e); the Attorney General shall maintain a national database at the Federal Bureau of Investigation for each sex offender and any other person required to register in a jurisdiction’s sex offender registry, known as the National Sex Offender Registry, id. § 16919(a); and the Attorney General shall ensure (through the Registry or otherwise) that updated information about a sex offender is immediately electronically forwarded to all relevant jurisdictions, id. § 16919(b). The foregoing SORNA provisions are manifestly rationally adapted to carry Congress’s spending power into execution for the legitimate purpose of establishing a comprehensive national system for the registration and notification by convicted sexual offenders to protect the public against sex offenders and offenders against children.
At the same time, in SORNA, Congress under its power to enact federal laws to criminalize conduct that would interfere with its enumerated powers, criminalized a knowing failure by a federal sex offender to register or update a registration. Thus, while Congress used its spending clause power to induce each jurisdiction to enact a criminal penalty for the failure of a sex offender to comply with the requirements of SORNA, see 42 U.S.C. § 16913(e), it also enacted a federal criminal law counterpart that provides that a federal sex offender who knowingly fails to register or update a registration as required by SORNA shall be fined or imprisoned not more than 10 years, or both, 18 U.S.C. § 2250(a)(2)(A). This latter provision enables the federal government to prosecute and convict federal sex offenders who knowingly fail to register, or to keep the registration current in each place where the offender resides, is an employee, or is a student, as required under § 16913(a)-(c). The states and other defined jurisdictions are enabled to prosecute and convict sex offenders who knowingly fail to comply with the requirements of SORNA under the criminal penalties the participating states and other jurisdictions are required to enact by § 16913(e). See, e.g., 42 U.S.C. § 16913(c) (Every sex offender “shall, not *260 later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved” and “inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.”). Thus, a federal sex offender, such as Kebodeaux, who fails to update his registration as required by SORNA, after changing his residence intrastate, may be prosecuted, convicted and punished for knowingly failing to abide by SORNA requirements, by either the state or the federal government.
Section 2250(a)(2)(A) is necessary and proper to bring about parity and a consistent level of enforcement, monitoring and tracking of all sex offenders, so that laxity toward federal sex offenders does not disrupt or interfere with Congress’s enumerated powers sought to be executed through SORNA. Although § 2250(a)(2)(A) overlaps with the participating jurisdictions’ criminal penalties enacted pursuant to § 16913(e), Congress evidently had reason to enact a federal criminal law to further and protect its enumerated powers brought into execution by SORNA. As the Supreme Court explained in Carr v. United States, “it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA’s registration requirements by federal sex offenders — persons who typically would have spent time under federal criminal supervision.” - U.S. -, 130 S.Ct. 2229, 2238, 176 L.Ed.2d 1152 (2010). Congress could reasonably expect the states to have an incentive and ability to monitor, track, and convict state sex offenders who change names, residences, employment, or schools intrastate without updating their registrations, while deeming that the federal government should take primary responsibility for deterring federal sex offenders from doing the same. After all, because federal sex offenders are identified and classified as such by virtue of their federal convictions, it is reasonable for Congress to require the federal government, rather than the participating jurisdictions, to be primarily responsible for monitoring and enforcing their registration and updating requirements under SORNA.
Congress also exercised its Commerce Clause authority to enact § 2250(a)(2)(B), which punishes sex offenders who travel in interstate commerce and evade registration requirements. No one disagrees with this use of congressional power in SORNA. Furthermore, “Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce [and] the means chosen are ‘reasonably adapted’ to the attainment of a legitimate end under the commerce power.” Gonzales v. Raich, 545 U.S. 1, 37, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Scalia, J., concurring in the judgment). Justice Scalia’s view of the Necessary and Proper Clause was adopted by five additional members of the Supreme Court, the five members of the majority in Comstock.[1] In Comstock, the Court explained that in determining whether the Necessary and Proper Clause grants Congress authority to enact a particular piece of legislation, “the relevant inquiry is simply ‘whether the means chosen are “reasonably adapted” to the attainment of a legitimate end under the commerce power’ or under other powers that *261 the Constitution grants Congress the authority to implement.” 130 S.Ct. at 1957 (quoting Raich, 545 U.S. at 37, 125 S.Ct. 2195 (Scalia, J., concurring in the judgment), in turn quoting United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941)).
Congress thus clearly also had the authority to enact § 16913(a)-(c), which lays out registration and updating requirements for sex offenders, and § 2250(a)(2)(A), which provides a criminal penalty for federal sex offenders who knowingly fail to comply with § 16913(a)-(c). Congress’s imposition of registration and updating requirements on federal sex offenders, even if they never move to another state, is reasonably adapted to the exercise of its powers under SORNA because it is a necessary part of the comprehensive national system of SORNA that Congress enacted. Without uniform and consistent registration requirements, sex offenders could change their information or identity intrastate — for example, by changing their names or residences' — decline to register such changes, and subsequently feel able to commit sex crimes and/or move to another state undetected. In so doing, they would undermine Congress’s goal of establishing a nationwide, comprehensive scheme for tracking the whereabouts of sex offenders. The reasoning of other courts of appeals in cases dealing with state sex offenders is equally applicable to federal sex offenders. See United States v. Howell, 552 F.3d 709, 717 (8th Cir.2009) (“Although § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines. In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated. Without knowing an offender’s initial location, there is nothing to ensure the government would know if the sex offender moved. The registration requirements are reasonably adapted to the legitimate end of regulating ‘persons or things in interstate commerce’ and ‘the use of the channels of interstate commerce.’ ” (quoting United States v. May, 535 F.3d 912, 921 (8th Cir.2008), in turn quoting Lopez, 514 U.S. at 558-59, 115 S.Ct. 1624) (internal quotation marks omitted)); accord United States v. Guzman, 591 F.3d 83, 89-91 (2d Cir.2010) (“Requiring sex offenders to update their registrations due to intrastate changes of address or employment status is a perfectly logical way to help ensure that states will more effectively be able to track sex offenders when they do cross state lines. To the extent that § 16913 regulates solely intrastate activity, its means ‘are “reasonably adapted” to the attainment of a legitimate end under the commerce power,’ and therefore proper.” (quoting Raich, 545 U.S. at 37, 125 S.Ct. 2195 (Scalia, J., concurring in the judgment))); cf. United States v. Pendleton, 636 F.3d 78, 87 (3d Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1090, 181 L.Ed.2d 982 (2012) (same). Section 2250(a)(2)(A) gives the federal government the complementary power to enforce SORNA’s registration and updating requirements against federal sex offenders and thus reasonably adapts Congress’ commerce clause power to effectuate Congress’s purposes in enacting SORNA. And, as already explained, “it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA’s registration requirements by federal sex offenders — persons who typically would have spent time under federal criminal supervision.” Carr, 130 S.Ct. at 2238.
In sum, Congress could reasonably conclude that 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913(a)-(c) were “convenient, or *262 useful” or “conducive” to the “beneficial exercise,” McCulloch, 17 U.S. at 413, 418; see also id. at 421, of its legislative power, were means rationally adapted to the attainment of a legitimate end — a national comprehensive system for registering, updating, and tracking sex offenders — under the commerce power, the spending power, or under other powers that the Constitution grants Congress the authority to implement. Comstock, 130 S.Ct. at 1957 (citing Raich, 545 U.S. at 37, 125 S.Ct. 2195 (Sealia, J., concurring in the judgment), in turn quoting Darby, 312 U.S. at 121, 61 S.Ct. 451).
III.
The majority is also clearly in error in concluding that SORNA’s provisions do not apply retroactively to Kebodeaux because he served his sentence before the enactment of SORNA on July 27, 2006. Quite to the contrary, the Act authorized the Attorney General to specify the applicability of its requirements to sex offenders convicted before its enactment. 42 U.S.C. § 16913(d); see United States v. Johnson, 632 F.3d 912, 922 (5th Cir.2011) (“When SORNA was enacted, Congress elected not to decide for itself whether the Act’s registration requirements — and thus § 2250(a)’s criminal penalties — would apply to persons who had been convicted of qualifying sex offenses before SORNA took effect. Instead, Congress delegated to the Attorney General the authority to decide that question.”). On February 28, 2007, the Attorney General issued an interim regulation stating that SORNA’s requirements “apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.” Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894, 8897 (Feb. 28, 2007); (codified at 28 C.F.R. § 72.3). Neither SORNA nor the Attorney General’s interim regulation provides any exception for released preact federal offenders from the retroactive application of SORNA’s registration and notification requirements.
Not only does the plain language of SORNA and the Attorney General’s interim regulation make SORNA’s requirements retroactively applicable to Kebodeaux and all other sex offenders, regardless of the dates of their convictions or releases from custody, our prior decisions have consistently upheld SORNA against similar challenges and arguments. In Johnson, we reaffirmed our holdings in United States v. Whaley, 577 F.3d 254, 260-64 (5th Cir.2009), that SORNA does not violate due process, exceed Congress’s authority under the Commerce Clause, or exceed the non-delegation doctrine; and our holding in United States v. Young, 585 F.3d 199, 206 (5th Cir.2009), that SORNA does not violate the Ex Post Facto Clause. Also, in Johnson itself, we rejected a challenge to the validity of the Act and the decision of the Attorney General to apply it to persons whose convictions for sex crimes predate its enactment, holding that SORNA does not violate the Tenth Amendment, and that the Attorney General’s failure to comply with Administrative Procedure Act procedures prior to promulgation of the interim rule was harmless. 632 F.3d at 930-33.
IV.
In summary, after agreeing with this courts’ prior decisions upholding SORNA against Ex Post Facto, Due Process, Tenth Amendment, and other attacks, the majority opinion offers no valid reason that SORNA is not a reasonable adaptation of Congress’ spending power, commerce power, and power to enact criminal laws to fur *263 ther and protect its enumerated powers, for the legitimate end of establishing a comprehensive national sex offender registration and notification system. Accordingly, in my view, SORNA is not unconstitutional as applied to Kebodeaux.
For these reasons I respectfully dissent.

. In declining to join the majority in Com-stock, Justice Scalia did not question his prior reasoning regarding the Necessary and Proper Clause; rather, he joined Justice Thomas's dissent in Comstock on the ground that the statute at issue did not effectuate Congress's exercise of an enumerated power. See Comstock, - U.S. -, 130 S.Ct. 1949, 1970 (Thomas, J., dissenting).